THE STATE v. REDEMEIER, *Appellant.*

1. **Criminal Law**: INSANITY AS A DEFENSE: BURDEN OF PROOF: QUANTUM OF PROOF. The burden of proving insanity as a defense to a charge of crime, rests upon the defendant. To make out the defense it is necessary to produce evidence which will reasonably satisfy the jury of the fact. HENRY, J., dissenting as to the *quantum* of evidence.

2. **Practice**: NEW TRIAL. A new trial will not be granted on account of newly discovered evidence which is merely cumulative.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*A. N. Merrick* for appellant.

*J. L. Smith*, Attorney-General, for the State.

NORTON, J.—The defendant was indicted at the July term, 1878, of the St. Louis criminal court for murder in the first degree, for killing one Franz Vosz. The cause was tried at the November term, 1878, of said court, and defendant was found guilty and sentenced to be hanged. An appeal was taken to the St. Louis court of appeals, where the judgment of the criminal court was affirmed, and from which defendant has appealed to this court. The fact that deceased was killed by the defendant in the most brutal manner, without cause or excuse, is not disputed, but it is claimed that no criminality attaches to defendant because it is alleged that he was insane at the time the homicide was committed. The insanity of defendant was the only defense relied upon in the trial court, and a reversal of the judgment is sought mainly upon alleged error committed by the court in its charge given to the jury, and in refusing to give the declarations of law asked by defendant.

The charge complained of is as follows: "As a defense to this prosecution, the defendant by his counsel has interposed the plea of insanity. He says, that the act

which he is alleged to have committed is not an act for which he can be held criminally responsible, in other words, that the act was and is excusable in law, because at the time of its commission, as charged, he was insane.

The term insanity, as used in this defense, means such a perverted and deranged condition of the mental and moral faculties as renders a person incapable of distinguishing between right and wrong, and makes him unconscious at times of the nature of the act he is about to commit. Such insanity, if proved to the reasonable satisfaction of the jury to have existed at the time of the commission of the act, is in law an excuse for it, however brutal or atrocious it may have been.

The law presumes every person to be of sound mind until the contrary is shown, and when, as in this case, insanity is interposed as a defense, the fact of the existence of such insanity at the time of the commission of the offense charged must be established by the evidence to the reasonable satisfaction of the jury, and the burden of proving this fact rests with the defendant.

The opinions on questions of insanity which have been given by the medical experts are testimony before you, and are subject to the same rules of credit or discredit as the testimony of other witnesses. The opinions neither establish nor tend to establish the truth of the facts upon which they are based. Whether the matter testified to by the witnesses in the cause, as facts, are true or false, is to be determined by the jury alone. Neither are the hypothetical questions put to the medical experts by the counsel in the cause, evidence of the truth of the matters stated in these questions.

Although the jury may believe and find from the evidence that the defendant did commit the act charged against him, yet, if they further find that, at the time he did so, he was in such an insane condition of mind that he could not distinguish between right and wrong, then such act was not malicious, and the jury should acquit him of

the crime charged, on the ground of insanity, and so say in their verdict.

To establish his insanity, positive or direct testimony is not required. Circumstantial evidence which reasonably satisfies the minds of the jury that the defendant was, at the time the alleged shooting was done, incapable of distinguishing between right and wrong, or of comprehending the nature of the act, will be sufficient.

The jury are the sole and exclusive judges of the degree of credit which shall be given to the testimony in the case, and have the right to receive and credit as true, or to reject and discredit as untrue, the whole or any part of the testimony of any witness in the case. If, after the jury have carefully taken into account and considered all the evidence in the case, there remains in their minds a reasonable doubt of the guilt of the defendant, the law, in its humanity, gives to him the benefit of that doubt, and they should acquit. But, to authorize an acquittal on the ground of doubt alone, such doubt should be reasonable and substantial, and not a mere guess or conjecture of his "probable innocence."

The objections urged to the above charge are that it does not properly define insanity, and that the rule as to the burden of proof when the defense is insanity, and the degree of proof sufficient to authorize a jury to find insanity, are not correctly stated. Testing these objections by repeated decisions of this court, it will be found that they are not well taken. These decisions, we think, clearly establish that the law presumes every person who has reached the years of discretion to be of sound mind and capable of committing crime, and that such a person, charged with the commission of crime, before he can escape the penalty affixed thereto, under the plea of insanity, must rebut such presumption by evidence which reasonably satisfies the jury that he was insane at the time the act was committed, or that his mind was so diseased as to render him incapable of distinguishing between right and wrong in respect to

the act for which he is sought to be made criminally respon-
sible; that the question of insanity is one of fact to be de-
termined by the jury, and that, when the unlawful killing
is proved by the State or admitted by the accused, the
State may rest upon the legal presumption of the sanity of
the accused till he shows the contrary; that the burden of
proving insanity rests upon the party setting it up, and
that, to discharge himself of this burden, it is not necessary
to introduce evidence which establishes, beyond a reason-
able doubt, his insanity, but only sufficient to reasonably
satisfy the jury that it existed at the time the offense was
committed; that, if the preponderance of the evidence
offered establishes insanity, it is sufficient. *Baldwin v.
State*, 12 Mo. 223; *State v. Huting*, 21 Mo. 464; *State v.
McCoy*, 34 Mo. 531; *State v. Klinger*, 43 Mo. 127; *State v.
Hundley*, 46 Mo. 414; *State v. Smith*, 53 Mo. 267; *State v.
Holme*, 54 Mo. 153; *State v. Simms*, 68 Mo. 305. In the
case of the *State v. McCoy, supra,* it was held " that it is in-
cumbent on the State to prove every fact necessary to es-
tablish the crime of murder, which necessarily includes the
sanity of the prisoner; but the burden of proving such
sanity of the prisoner is fully met by the presumption of
law that every person is of sound mind until the contrary
appears; and he who undertakes to escape the penalty of
the law by means of the plea of insanity must rebut such
presumption by proof entirely satisfactory to the jury. It
is a defense to be made out by the prisoner, and by proof
that will satisfy the jury that he was incapable of distin-
guishing between right and wrong." The instructions of
the court as to the burden of proof of insanity and the *quan-
tum* of evidence to establish it are justified, not only by the
case last cited, but by all the cases hereinbefore cited.

It is also insisted that the capacity of defendant to dis-
tinguish between right and wrong was the only test laid
down by the court in its charge for the guidance of the
jury in determining the question of insanity, and that, for
this reason, it is erroneous. If the charge means that, and

nothing more, the court would have been authorized to give it under the authority of the case last cited, and 2 Greenleaf Ev., § 373; *Rex v. McNaghten*, 10 Cl. & Fin. 200; *Rex v. Offord*, 5 Carr. & P. 168; *Commonwealth v. Mosler*, 4 Barr 267; *Freeman v. People*, 4 Denio 9. But we think the construction placed by counsel on the instruction is too narrow, and that the capacity of defendant to distinguish between right and wrong was not the sole and only test by which the jury were to be governed in determining the criminal responsibility of defendant, because they were expressly told that, if defendant was incapable of comprehending, or was unconscious of the nature of the act at the time he committed it, they would acquit.

It is also earnestly and ably argued by counsel that the rule as to the degree of evidence necessary to establish insanity, as adopted in this State, should be modified and made to conform to the rule laid down in the case of *State v. Crawford*, 11 Kas. 32, and other cases in Illinois, Indiana and New Hampshire, of which the case of *State v. Crawford*, is a type. The rule approved in that case is that, whenever the defense offers evidence which raises a reasonable doubt as to the insanity of the accused, that is sufficient to rebut the presumption of sanity and to authorize an acquittal.

As to the degree of evidence which the accused is required to offer to establish the fact of insanity, the authorities are so conflicting as to be irreconcilable. It is held by some courts of the highest authority, both in this country and England, that insanity, when set up as an excuse for the crime charged, should be established by evidence sufficient to satisfy the minds of the triers of the fact beyond a reasonable doubt, that it existed at the time the act was committed. The conclusion reached in this class of cases is based upon the theory that, in every criminal case, two presumptions of law are indulged—one in favor of the person charged, that he is innocent of the charge—the other in favor of the public, that the accused, if of the years of dis-

12—71

cretion, is of sound mind and capable of committing crime, and that, as the presumption of innocence protects the accused till the State, by evidence, establishes his guilt beyond a reasonable doubt, so the presumption that he was sane when the act was committed, protects society till it is overthrown by a like degree of evidence offered in support of the plea of insanity.

While some courts have gone to this extreme, others of high authority have gone to the other extreme of holding that, to support the plea of insanity, it is only necessary that the evidence offered should be sufficient to raise a doubt as to the insanity of the accused. Other courts, equally authoritative and much greater in number acting on the principle that *in medio tutissimus est*, have adopted a rule lying between these two extremes, holding that the defense of insanity is established when the evidence offered in support of it preponderates in favor of the fact, and reasonably satisfies the jury that it existed at the time the criminal act charged was committed. The rule last referred to has been the established law of this State since the case of *Baldwin v. State, supra,* was decided, and believing that it is sustained not only by reason, but by the weight of authority, both in this country and England, we are unwilling to make a departure from it. The fact that insanity is so easily simulated demonstrates the wisdom of the rule and affords a strong reason why we should adhere to it, and decline to adopt the rule contended for by defendant's counsel, the tendency of which, in my judgment, would be to stimulate, rather than repress, homicidal mania. It follows from what has been said that the charge given to the jury on behalf of the State is not subject to the objections urged against it, and it also follows that the court properly refused the instructions of defendant, which asked the court to lay down a rule for the guidance of the jury in determining the question of insanity at variance with the rule above announced as settled in this State. The instructions asked by defendant in regard to the test to be applied in

determining the insanity of defendant having been already substantially given, were for that reason properly refused.

It is also urged that the judgment should be reversed because the verdict of the jury was against the evidence, and because the preponderance of the evidence established the insanity of defendant. The claim that such preponderance existed is based upon the facts that the evidence did not disclose an adequate motive for the commission of the homicide; that deceased was killed in a public street in the presence of several witnesses; that defendant was indifferent to the consequences of his crime and made no effort to escape, and previous to the homicide would frequently sit for an hour or more at a time without engaging in conversation. While the absence of motive may be considered, in connection with the other facts, in reaching a conclusion as to whether defendant was or was not insane, it by no means follows from the mere fact that the evidence offered fell short of discovering a motive, that a motive did not in fact exist, locked up in the breast of the accused. That defendant was operated upon by some motive in killing deceased may be deduced from the circumstances in evidence, that about two years before the homicide, deceased went into a saloon where several persons were present, defendant being one of the number, and invited all but the defendant to drink with him, at which defendant took umbrage and had some "words" with the deceased. That this slight or insult took root in the breast of defendant is evident by the statement made by him immediately after the homicide when questioned about it, that, "I had it in for the son of a b——h for the last two years: I could have got even with him a year ago, but I didn't do it; but to-day I got a good chance and I took that chance with powder and ball." Besides this, three physicians were examined on the trial. One of them, introduced on behalf of defendant, testified that he had never made insanity a specialty, but had treated in a practice of twenty years forty or fifty persons of unsound mind,

that he had made, since the homicide, personal examination of defendant, and from his examination and so much of the evidence as he had heard, he was of the opinion that defendant was insane. The other two physicians were introduced on the part of the State. One of them, Dr. Bauduy, testified that he was a professor, in a medical college, of diseases of the mind and nervous system, and had been for fourteen years in charge of St. Vincent's Lunatic Asylum, and for that period of time had from 150 to 500 patients under his daily care, that it was his constant occupation to be with the insane, and that he had made the study of insanity and diseases of the nervous system specialties. The other, Dr. Hughes, testified that he had for eleven years made the study of insanity a specialty, and for about six years of that time had been in charge of the State Insane Asylum, at Fulton, and had treated 3,000 insane patients. A question in writing stating a hypothetical case embracing all the material evidence submitted on either side was put to these witnesses, and they were requested to base their opinion upon the facts stated in the question as to the insanity of defendant at the time he killed the deceased. Dr. Bauduy answered that, basing his opinion solely upon the hypothetical case, it was that at the time of the commission of the homicide the defendant was sane, and after giving his scientific reasons for his conclusions added : " I see in that hypothetical case no scintilla of insanity whatever." Dr. Hughes, in answer to the question, also gave it as his opinion that the accused was sane at the time the homicide was committed. We have held that in criminal cases, where it clearly appears that the verdict is against the weight of evidence, this court would interfere to set it aside. But in this case, after a careful examination of the evidence, we cannot say that the verdict is against the weight of evidence and will not therefore interfere.

The newly discovered evidence set out in the motion as a ground for a new trial being entirely cumulative, the

motion was properly overruled for that reason. Perceiving no error either in giving or refusing instructions or in admitting or rejecting evidence, the judgment is affirmed, in which Judges SHERWOOD, HOUGH and NAPTON concur, and Judge HENRY dissents.

HENRY, J., DISSENTING.—I cannot concur in the foregoing opinion, and will briefly state my reasons for dissenting. The allegation, that defendant willfully, deliberately and premeditatedly committed the homicide for which he is indicted, includes the allegation that he had a mind capable of willing, deliberating and premeditating. Willfulness, premeditation and deliberation are constituent elements of murder, and none but a sane person can commit that, or any other crime. Homicide is not necessarily a crime, for one may kill in self-defense, or by accident, or in a state of mental aberration. If the State prove the killing, she is not also required to prove that it was not in self-defense, or not the result of accident; but when defendant has proven enough to raise a reasonable doubt whether it was in self-defense, or accidental, the State must show, not by a mere preponderance of evidence, but beyond a reasonable doubt, that it was not accidental or in self-defense; and it is difficult to perceive a reason, why the same principle is not equally applicable to the issue of sanity made by the plea of not guilty. It is true that the law presumes every one to be sane, and therefore the State is not required to introduce evidence of the sanity of the accused except in rebuttal. The sanity of defendant is as much in issue as the homicide; and although the law presumes certain facts to exist when certain other facts are proven, yet in a criminal case, when the fact presumed is disproved, or sufficient evidence is adduced to warrant a reasonable doubt of its existence, the presumption ceases. To say that only a sane person can be guilty, and declare the law to be, that the State must establish defendant's guilt beyond a reasonable doubt, and yet that, unless de-

fendant establishes his insanity by a preponderance of evidence, the jury should convict, is a palpable contradiction. If one accused of murder admit the homicide and allege that it was an accident, it is for him to make that appear, but if he introduce evidence tending to prove that fact sufficient to beget in the minds of the jury a reasonable doubt that the killing was intentional, the benefit of that doubt he is entitled to by law. What is the substance of the defense in either case? Simply that, although the homicide was committed by the defendant, his mind did not concur in the act; and yet, in the case of the one who admits his sanity, he has the benefit of a reasonable doubt that the act had the assent of his mind, while it is urged that the other, who alleges his insanity, shall not have the benefit of a reasonable doubt, but must prove, by a preponderance of evidence, a state of facts showing that the mind did not concur. The distinction has no reasonable foundation for its support. If a jury are to acquit on a reasonable doubt of defendant's guilt, and one cannot be guilty if insane, by what process of reasoning will a jury, having a reasonable doubt of defendant's sanity, come to the conclusion that they should convict notwithstanding the instruction that a reasonable doubt of his guilt entitles him to an acquittal? A man whose thinking is not regulated by artificial rules would not hesitate to acquit under such circumstances, and it would require a most refined and ingenious argument to demonstrate to him that he could convict without disregarding that instruction. But it is said that the law presumes him sane, and that this presumption deprives the accused of the benefit of a reasonable doubt as to his sanity. The one proposition is based upon the fact that sanity is the normal condition of the human mind, and that insanity is exceptional and abnormal. The other presumption is in favor of life and liberty. The former presumption has no effect but to relieve the State, in the first instance, from making any proof on the subject, holding that the fact that the accused is a human being dispenses

with proof of his sanity, because that is the normal condition of human beings. It simply reverses the order, not the burden, of proof. It presumes the accused sane, but requires him to make no more proof of his insanity than of any other fact which he relies upon for his acquittal of the crime he is charged with. The one presumption does not destroy the other, as to any fact which must be found to exist in order to a conviction. I cite no authorities in support of these propositions, but they are numerous and respectable.