## TOM KING *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Evidence. Res gestæ.*

   The declarations of a defendant, made some hours after the homicide for which he is on trial, are not admissible as a part of the *res gestæ.*

2. SAME. *Examination of witness. Practice. Discretion.*

   Witnesses in rebuttal should be confined to matters in rebuttal, and not allowed to repeat their evidence in chief; but this matter is largely in the discretion of the court.

3. SAME. *Murder. Sudden encounter. Instruction.*

   Murder may be committed in a sudden encounter, and if previous recent threats to kill deceased or do him great bodily harm are

proved to have been made by defendant, an instruction, asked by defendant, which directs the jury to disregard the evidence of such threats, and which ignores the idea that the purpose to kill may have been pursuant to the malice indicated by the threats, is properly refused.

4. SAME. *Onus probandi. Reasonable doubt.*

It is not the law of homicide that if no excuse or justification of the killing is shown by the state's evidence, the defendant is guilty of murder unless he has by his evidence proved excuse or justification; nothing more in such case is required of a defendant than to raise a reasonable doubt of his guilt from the whole evidence.

FROM the circuit court of Tate county.

HON. Z. M. STEPHENS, Judge.

Tom King, the appellant, was indicted for the murder of one Walter Clayton. The evidence showed, or tended to show, that defendant laid in wait for the deceased in the early part of the night of the killing, and made threats of doing great bodily harm to deceased if he had to wait on the roadside, along which deceased was expected to come, until midnight. When the deceased came he was in the company of others, and defendant accompanied them along the road, the parties indulging in a spirited quarrel as they went. It appeared, however, for a while before the homicide, that the controversy had ended, but it was again suddenly renewed, and defendant struck deceased with a piece of a fence rail and killed him. Some hours after the homicide and during the same night, the defendant and a witness returned to the scene of the killing in search of a knife with which defendant claimed the deceased was endeavoring to cut him at the time of the encounter, and, while making the search in the dark, defendant, who was stooping and feeling about, arose, saying, "Here is the knife," and produced a "long-handled barlow," which he asserted he had found on the ground.

The sixth instruction given for the state was in these words: "6. If you believe from the evidence, beyond a reasonable doubt, that defendant made threats the night of the killing and before the killing, that he would get the deceased that night,

and that he would make it right with him if he had to wait till midnight, and that he was afterwards seen on the road traveled by deceased; that when deceased came along defendant provoked a difficulty and procured a dangerous weapon, a piece of rail, and attempted to strike deceased when deceased was doing nothing to defendant, and was prevented from doing so, but that he, defendant, still retained the weapon in his hands and followed deceased up, then deceased would have had a right to draw a knife in his own defense; and if defendant then struck deceased and killed him, he is guilty of murder, and you should so find.''

The nineteenth instruction asked by appellant, and which was refused, was as follows:

'' 19. If the jury believe, from the evidence, that defendant waited by the road for deceased, and stated, in effect, that he was waiting for deceased, to raise a difficulty with him, the jury will reject and discard this testimony altogether, in arriving at their verdict, if, considering all the evidence in the case, they have a reasonable doubt as to whether defendant was waiting for deceased for the purpose of killing him, or simply for the purpose of having a fight with him without weapons. This testimony will also be discarded by the jury in arriving at their verdict, if, from all the testimony in the case, they have a reasonable doubt whether the killing was the result of a sudden encounter, or was the accomplishment of a purpose in the mind of defendant while he was waiting by the road.''

The other instructions referred to by the supreme court are sufficiently given in the opinion.

*Eugene Johnson* and *J. F. Dean*, for appellant.

The statement of the defendant, ''while feeling around on the ground'' in the dark, ''Here is the knife,'' or ''I've found the knife,'' at the very time he finds it, or at the very time he raises up with it in his hand, is competent testimony, and should have been admitted. The statement is a part of the

*res gestæ.* It is a verbal act. It is a declaration accompanying the act, that explains it and gives it character. That this testimony should have been admitted, we contend is clearly sustained by overwhelming weight of authority. Greenl. on Ev., vol. 1, sec. 108, note 2; *Mayes* v. *State*, 64 Miss., 329. Whether the deceased was armed with a knife is one of the vital questions in this case. Defendant testified to this fact, and put on the stand another witness to corroborate his own statement. The ruling of the court deprived him of the full force of the testimony of this witness. The weight to be given this testimony was for the jury, not the court. The court had no more right to assume that the exclamation or statement made at the time of picking up the knife was pretended or feigned, than to conclude that defendant's whole statement about it was fabricated. The re-examination by a party of his witness should be confined to explaining and setting himself right on points which the cross-examination has brought out, but not fully developed, and which need explanation, so that the testimony of the witness may be fairly and clearly understood.

In this case the state had an advantage to which it is not entitled, it had its important testimony repeated to the jury at the very end of the case. *Dillard* v. *The State*, 58 Miss., 368.

The sixth charge for the state is erroneous, because it wholly omits the necessary qualification that the threats, to be of any value as testimony in the connection given, must have expressed a purpose on the part of defendant to kill the deceased, or to do him some great bodily harm, and that this was defendant's purpose or design at the time he uttered them.

The fifth instruction for the state is certainly erroneous. After the numerous decisions of this court (*Cunningham* v. *State*, *Polluck* v. *State*, *Hawthorne* v. *State*, and others), it is useless to discuss before any intelligent tribunal in Mississippi the doctrine of the burden of proof in criminal cases. However, the very language of the charge in question has been

passed on and condemned.  *Hawthorne* v. *The State*, 58 Miss., 778.

*Wiley N. Nash*, attorney-general, for appellee.

The facts show that appellant was seen lying in wait for the deceased on the road he knew deceased would have to travel to get to his home, and he stated that he was there to "get" Clayton, and would do so if he had to stay there until midnight. King was the aggressor throughout, from first to last, from the meeting until the death.  More than this, he brought on the difficulty; he provoked it, while the deceased all the while was trying to avoid a difficulty.  The appellant, when the fatal blow was given, did not act fairly, but took advantage of the deceased.  He evidently slipped up on Clayton and killed him when deceased was not expecting an attack.  In fact, it was thought that the trouble was over.  The murdered man never spoke after he was struck.  The party killed was not armed, and was entirely defenseless.  The witness, Garrett, should not have been allowed to state what King said when he found a knife on the ground at the scene of the murder.  It was after the transaction was over, and King was seeking an opportunity to make testimony for himself, which is not warranted by any rule of law or common sense.

The rebuttal testimony was eminently proper, and especially in the case at bar, and in the peculiar attitude of this case. Allowing witnesses to go over the same ground is a matter within the discretion of the court.

The settled rule of this court is that all of the instructions given by the court to the jury are to be construed together, and if, taken together, they correctly announce the law, a reversal of the judgment will not occur, although some of the instructions, in themselves, may not be strictly correct.  *Mask* v. *State*, 36 Miss., 77.

When all the charges in this case are considered together, it is impossible for the jury to have been misled as to the law of this case.

CALHOON, Sp. J., delivered the opinion of the court.

There was no error in refusing to permit the witness, Ransom Garrett, to testify to what defendant, King, said when those two were searching for a knife at the place of the killing. We agree with counsel that it was "part of the *res gestœ*," but it was part of the *res gestœ* of the search for a knife, and not of the homicide, which had occurred some hours before.

It was not in accordance with proper practice to allow the state, in rebuttal, to extract from the witness, Raiford, a rehearsal of part of his testimony in chief, but it is not reversible error in this case, because it is clear it could not have worked any prejudice to the accused. The rule is familiar that witnesses in rebuttal should be confined to matters in rebuttal, and not allowed to repeat what they said on the examination in chief, and the rule is wise and proper and promotive of fair trials. *Dillard* v. *State*, 58 Miss., 389, 390. However, this matter is largely in the discretion of the court, and there was no such abuse of it on the trial of this case as could have worked injury or such as warrants serious criticism. The practice encouraged might become an engine of great oppression, and should be repressed by the courts, which are not organized to convict prisoners, but to see that trials are absolutely impartial and fair.

Defendant's nineteenth instruction was properly refused. Besides being put in a shape strongly calculated to mislead a jury, it is not sound in substance. It tells the jury to discard all the evidence of threats and lying in wait, "if, from all the testimony in the case, they have a reasonable doubt whether the killing was the result of a sudden encounter, or was the accomplishment of a purpose in the mind of defendant while he was waiting by the road." Murder may be committed in a sudden encounter, and in the case before us, while the killing may not have been in the accomplishment of any predetermined purpose to kill while lying in wait, it may still not have occurred but for the hostile feelings indicated by the threats, though the

purpose to kill may have been formed at the sudden encounter and after the lying in wait. The charge should have included the idea that, if the jury should reasonably doubt whether the killing was pursuant to any malice which might be indicated by the threats or lying in wait, whensoever the purpose to kill arose, if it ever did arise then, etc.

It was error to give the fifth and sixth charges at the instance of the state. It is not the law, as charged in the fifth instruction, that if no excuse or justification of the killing is shown in the evidence adduced by the state, the defendant is guilty of murder, "unless he has, by his evidence, proved excuse or justification." This assumes as proved that the state has established the truth of the allegations of the indictment, and made out its case, and, after this assumption, it requires the defendant to prove his innocence in order to escape the highest penalty of the law. The very thing being investigated was the truth of the charge in the indictment, and, if that was made out beyond a reasonable doubt, *prima facie* it then devolved on defendant, not to prove innocence, but simply to raise a reasonable doubt from the whole evidence in the case. The mortal danger of a charge like this is shown in the use made of it by the vigorous and able district attorney in his concluding argument to the jury, as set out in the record. *Hawthorne's case*, 58 Miss., 778; *Smith's case, Ib.*, 874; *Ingram's case*, 62 Miss., 142. This fifth charge for the state in the case at bar is in full, thus: "While it is incumbent on the state to prove the allegations in the indictment, or to make out its case, still, if there be no excuse or justification for the homicide, by the defendant shown in the evidence adduced by the state, then he is guilty of murder, unless he has, by his evidence, proved excuse or justification.

It will be seen at a glance that, though it recognizes that the state must make out her case, it does not intimate that the jury must believe she has done so, but says defendant is guilty unless the state's evidence shows excuse or justification, or unless defendant proves it. First, the state must make out her case

to a moral certainty.    Then, and not until then, is the accused required by the law of the land to do anything, and then he need only, from the whole body of the evidence adduced for him and against him, raise a reasonable doubt of his guilt to entitle him to acquittal.

It was error to give the sixth charge asked by the state. Because defendant made threats, and because he was "afterwards seen on the road traveled by deceased," and because, when deceased came by, he provoked a difficulty, and then picked up a piece of fence rail, which was a " dangerous weapon," and tried to strike deceased, when deceased was doing nothing, but was, at that time, prevented by others, and because defendant still retained the weapon, and followed deceased— whether all this might or might not give deceased the right to draw his knife, it does not follow that, if defendant then struck and killed him, he is therefore guilty of murder, unless he got the weapon for the purpose of using it to kill or do great bodily harm to his antagonist in a difficulty he intended to provoke, and did so use it and kill with it, pursuant to that design. *Thomas' case*, 61 Miss., 60; *Hunt's case*, 72 Miss., 413.

The whole scope of this charge, by the elaborate recital of evidence for the state, is to refer the killing back to the procurement of the weapon, but it omits the purpose for which it was procured and its use in pursuance of the purpose.    The error in these charges is not cured by those given for the defendant.    Because of them, the case is

*Reversed and remanded for a new trial.*