Points decided.

(May 28, 1903.)

# STATE v. SHUFF.

[72 Pac. 664.]

INDICTMENT FOR MURDER—SUFFICIENCY OF.—An indictment that charges that the assault was unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought made upon deceased, is sufficient under the statute.

CROSS-EXAMINATION—ADMISSIBILITY OF EVIDENCE.—When the prosecution shows that the killing was done with a certain gun, the defense may show on cross-examination any fact that will tend to explain why defendant had the gun at the time of the homicide.

COURT COMMENTING ON EVIDENCE BEFORE JURY.—It is error for the court to use any language in the hearing of the jury that can be construed into a comment on the weight of evidence.

PLEA OF INSANITY—NONEXPERT WITNESSES—TO WHAT MAY TESTIFY—NONEXPERT WITNESSES, WHEN THEY MAY TESTIFY AND GIVE AN OPINION.—Where it is shown that a witness has had an acquaintance of six years, or even less, with the party said to be insane, and it is also shown that he had observed peculiarities, it is error to reject such evidence. Where the plea is self-defense coupled with insanity, any witness who has known the defendant sufficiently to give an opinion as to his sanity or insanity may give such opinion; the jury are to determine whether such opinion has any foundation or not.

INSTRUCTIONS—AS TO INTENT AND PREMEDITATION.—It is not error for the court to instruct the jury that there need be no appreciable space of time betweeen the intention to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing is murder of the first degree, etc.

SAME—AS TO PREPONDERANCE OF EVIDENCE.—It is error to give an instruction "that to establish a defense on the ground of insanity, it must be clearly proved by the defendant by a preponderance of evidence given upon the trial."

SAME—AS TO REASONABLE DOUBT.—It is error for the court to instruct the jury "That in all other matters except that of insanity the defendant is entitled to every reasonable doubt."

SAME—AS TO STATEMENTS BY COUNSEL.—It is error for the court to instruct the jury that statements made by counsel for defendant in presence of the jury in the conduct of the trial, in so far as they are admissions against the defendant, may be considered by them.

(Syllabus by the court.)

APPEAL from District Court of Shoshone County. Honorable A. E. Mayhew, Judge.

Defendant was convicted of the crime of murder in the first degree and appealed from order overruling motion for new trial, and judgment. Reversed.

Charles E. Miller, for Appellant.

At the time of this homicide the deceased and the appellant were both in the employ of the Standard Mining Company, a corporation operating in Shoshone county, the former as timekeeper and the latter as a miner working underground. Part of the duties of the deceased, who had charge of the office of the mine at Mace, was to deliver checks to the various employees, for the previous month's work, on pay-day, the checks being drawn at the main office in Wallace. Pay-day for the month of October, 1901, fell on November 9th following, and when appellant signed the pay-roll, for twenty-four shifts, entitling him to $84, the deceased handed him a check for $5.25. Never dreaming that this was other than a mistake, the appellant so informed the deceased and returned him the check, by whom he was told to return after the rush, when any error would be rectified. As this was on Saturday night, he did not return until Monday morning. At that time he presented himself to the deceased at the office, inquiring whether he had found the mistake, upon which the deceased kept on writing at his desk for some time, and then tendered a paper over his shoulder, with the remark that there was a statement of the appellant's time. It then dawned on the appellant's mind that $78.75 of his pay had been held up on the demand of creditors although he had given no orders against same. From infancy until nine or ten years old he had been afflicted with chronic meningitis, a disease of the brain and spinal cord, leaving him with an impaired mind, peculiarly susceptible to derangement under excitable conditions, the initiative of which was usually the bursting of a blood vessel on the brain. As he explained it on the trial, the moment he was informed that his pay had been held up there was a shock in his head. He had a rifle

with him which he had brought, expecting to complete a prospective trade for a revolver, and as the word "statement" was used, he sprang from his chair and screamed "statement." At this demonstration the deceased reached toward a drawer in his desk, when appellant, supposing he was reaching for a weapon, sprang from his chair, raised the gun and told him to stop. The deceased then arose from his desk, moved toward a rear room, feeling above his head along the wall with his hands. The appellant, believing the office to be wired with destructive apparatus of some kind, after calling upon the deceased to stop, that he did not want to harm him, to save his own life, as he believed, fired the fatal shot, the whole affair occuring in a few minutes. The defense was insanity and self-defense. The jury found a verdict of murder in the first degree. Judgment of death by hanging was pronounced. From this judgment, and an order overruling a motion for a new trial this appeal is taken. The court erred in remarking in the presence of the jury, while Bruce Shuff, a witness for appellant, was giving his testimony, as follows: "Court: Well, I don't know what to think of it; I never in my life heard this line of testimony; now because a man should fall down, that is absolutely not the act of an insane man that I ever heard of." The court here undertook to comment on the weight of evidence, and in a manner prejudicial to the appellant, and such conduct has been universally held to be reversible error. (*People v. Bonds*, 1 Nev. 33; *State v. Stowell*, 60 Iowa, 535, 15 N. W. 417.)

Attorney General John A. Bagley, for the State.

The appellant's statement of facts is not according to the evidence; his testimony is taken from the testimony of the defendant, although he is contradicted on several material points by respectable witnesses. The witness Lippert gives us the facts in the case: "I saw the defendant at about 10 o'clock of the morning of that day, November 11, 1901. I first saw him when I was at the boiler-house and he was walking toward the Standard mine office with a rifle in his hands. The office is about one hundred yards above the boiler-house, at Mace,

Opinion of the Court—Stockslager, J.

Shoshone county, Idaho. The defendant went toward the office, stopped in front of the office on the railroad track. As I came into the office the defendant was in there, standing with his rifle in his hand, and Klein was sitting in front of the desk. Klein and I each said 'Good morning,' and I went behind the stove, and sat down in a chair, kind of back in the west corner of the office. In a few minutes Mr. Klein looked around and said, 'You have worked twenty-four days,' and the defendant says, 'Yes; that is correct.' Klein then went and wrote a statement, or went on writing, and in a few minutes he passed that over his shoulder and says, 'Here.' Defendant says, 'What's that?' Klein says, 'That's a statement of your time that you have worked.' Defendant said then, 'What in hell and God damnation can I do with that? I want you to make me out a check in full for my money; if you don't I will kill you right here,' and raised the gun on him. Klein then says, 'This is all I can give you; I can't give you nothing else.' By that I looked over my shoulder a little, just at the defendant and he turned the gun on me and says, 'You git out of here; git, or I will kill you first!' I got up, of course, from the chair and walked across in front of the gun, between him and Mr. Klein, opened the door and as I opened the door I heard Klein turn in his chair, jump up and start to the hallway back of the office, and before I had the door shut behind me the shot came and I shut the door; then I heard Klein make a loud scream, and I went outside on the porch of the office, just about two or three steps. When the defendant came outside opposite me and he throwed in another cartridge in his rifle and he raised the gun to me and said, 'If you say one damn word I will kill you yet right here.' I says to him, 'I never said nothing to you, did I?' And he says, 'No, nor you don't want to say nothing.' Then he walked on down the railroad; that's all I saw there."

STOCKSLAGER, J.—This is an appeal from the district court of Shoshone county. On the twelfth day of March, 1902, the grand jury of that county returned an indictment against the defendant charging him with the murder of one Eugene Klein.

The indictment charges that Chalmer E. Shuff on the eleventh day of November, A. D. 1901, and before the finding of this indictment, at the county of Shoshone, and state of Idaho, did unlawfully, willfully, deliberately, premeditatedly and of his malice aforethought make an assault on one Eugene Klein, with a certain gun, commonly called a rifle, which then and there was loaded with gunpowder and one leaden bullet, and by him, the said Chalmer E. Shuff, had and held in both hands, he, the said Chalmer E. Shuff, did then and there unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought shoot off and discharge at and upon the said Eugene Klein, thereby and by thus striking the said Eugene Klein with the said leaden bullet, inflicting on and in the back of the said Eugene Klein on his right side just below the shoulder blade, one mortal wound, of which said mortal wound the said Eugene Klein then and there died. And so the said Chalmer E. Shuff did in manner and form aforesaid unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, kill and murder the said Eugene Klein, contrary to the form of the statutes, etc.

To the sufficiency of this indictment a demurrer was interposed by counsel for defendant: 1. That the facts stated in said indictment do not constitute a public offense; 2. That the said indictment does not conform to sections 7677, 7678 and 7679 of the Revised Statutes of 1887, in that it does not appear from the said indictment with what intent this defendant made the assault therein charged.

Demurrer was submitted to the court on the fourteenth day of March, 1902, and on the same day overruled and denied, to which ruling of the court the defendant duly excepted and now assigns the ruling of the court as error.

After a trial in the district court of said Shoshone county, on the nineteenth day of April, 1902, a verdict was returned by the jury as follows:

"We, the jury in the above-entitled cause, find the defendant guilty of murder of the first degree as charged in the indictment.          BERNARD SMITH,

"Foreman."

On the twenty-sixth day of April, 1902, the judgment of the court was pronounced, which provided that on the twenty-fourth day of June, 1902, the warden of the state penitentiary of the state of Idaho, between the hours of 8 o'clock A. M. and 2 o'clock P. M., within the walls of said penitentiary, should execute the judgment by hanging the defendant by the neck until he was dead. A statement was settled and allowed by the court, also two bills of exceptions, one involving the ruling of the court on the demurrer, the other the ruling of the court refusing to grant the defendant a new trial.

Appellant assigns twelve errors, and we will take them up in the order presented by his brief. The first one is: "The court erred in overruling and denying appellant's demurrer to the indictment and his motion in arrest of judgment."

Counsel for appellant ably and earnestly urges that the indictment is insufficient to support a verdict of murder in the first degree. He says: "It does not charge that the appellant committed the assault with the deliberate and premeditated intention of killing the deceased, nor does it appear that the wounding was willful, deliberate, premeditated and of his malice aforethought." In support of this contention he calls our attention to 10 Ency. of Pl. & Pr. 124; *State v. Metcalf,* 17 Mont. 417, 43 Pac. 182; *Holt v. Territory,* 4 Okla. 76, 43 Pac. 1083; *State v. Brown,* 21 Kan. 38; *People v. O'Callaghan,* 2 Idaho, 156, 9 Pac. 414; *Leonard v. Territory,* 2 Wash. Ter. 381, 7 Pac. 872; *Kain v. State,* 8 Ohio St. 307; *State v. Thompson,* 26 Ark. 325; *State v. Blan,* 69 Mo. 317.

We have carefully examined these authorities and we find some of them uphold the contention of appellant, while others do not. In the case of *State of Idaho v. Ellington,* decided by this court, and reported in 43 Pac., at page 60, we find the indictment in almost the identical language of the one before us.

In the Ellington case the defendant was found guilty of murder in the first degree and the death penalty pronounced. Mr. Justice Huston, speaking for the court, among other things said: "We are clearly of the opinion that under the provisions of section 7687, Revised Statutes of Idaho, which is as follows:

No indictment is insufficient nor can the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice or substantial right of the defendant upon the merits—the objections urged by counsel for the defendant cannot obtain."

Counsel for defendant have urged their objections with exceptional zeal and ability, but we are mindful that our legislature has repeatedly reminded us that in the administration of the criminal law, justice is not to be defeated through technicalities. Section 8236, Revised Statutes, is as follows: "Neither departure from the form or mode prescribed by this code in respect to any pleading or proceeding nor any error or mistake therein renders it invalid unless it has actually prejudiced the defendant or tended to his prejudice in respect to a substantial right." And again, sections 7685 and 7686 are as follows:

"Section 7685. Words used in a statute to define offense need not be strictly pursued in the indictment, but other words conveying the same meaning may be used.

"Section 7686. The indictment is insufficient if it can be understood therefrom:

"1. That it is entitled in a court having authority to receive it though the name of the court be not stated; 2. That it was found by the grand jury of the county in which the court was held; 3. That the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with a statement that his true name to the jury is unknown; 4. That the offense was committed at some place within the jurisdiction of the court, except when the act though done without the local jurisdiction of the county is triable therein; 5. That the offense was committed at some time prior to the time of finding the indictment; 6. That the act or omission charged in the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended; 7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court

to pronounce judgment upon a conviction according to the right of the case."

Again, in *People v. Ah Choy,* 1 Idaho, 317, the territorial supreme court said: "The definition given of murder in the statute is 'The unlawful killing of a human being with malice aforethought, either expressed or implied.' This definition includes both degrees of murder, and it is sufficient if the indictment charges the offense in the language of the statute defining it."

Even in the absence of the two opinions of this court above referred to, it does not occur to us that there could be any serious question of the sufficiency of the indictment under consideration based upon the provisions of our statute.

The defendant was informed by the indictment of the time— before returning the indictment—of the alleged homicide, that it was committed in Shoshone county, state of Idaho, that the weapon used was a rifle loaded with gunpowder and leaden bullet, the name of the deceased and that he immediately died, that the act of killing on his part was done unlawfully, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought.

It is true the indictment does not charge in so many words that the killing was intentionally or purposely done as urged by counsel, but we do not think either essential under the provisions of our statute.

The second assignment is based upon the refusal of the court to permit a witness for the prosecution on cross-examination to answer the following question: "State whether at any time within three or four weeks prior to this occurrence you and the defendant were negotiating by which you were to trade a revolver for this rifle."

The witness had previously testified that between two and four weeks prior to the homicide he had a conversation with the defendant, and that defendant told him he had a rifle and wanted to trade it for a revolver he had.

Counsel for defendant in attempting to explain wherein the question and answer were material made the following statement to the court: "Suppose that there was a trade on between

Opinion of the Court—Stockslager, J.

these two men to trade this rifle for a pistol, and the defendant on that morning [the morning of the homicide] had brought the rifle up for the purpose of making a trade, that is my object in asking the question."

We think the learned judge was in error in not permitting the witness to answer this question. Whilst it may have been remote and apparently immaterial, yet it might have aided the jury, to some extent, at least, in ascertaining his purpose in having the rifle on that occasion. In cases of the magnitude and importance of the one under consideration, the jury should have the benefit of everything that will shed the least ray of light on the transaction. We do not wish to be understood as attaching special importance to this evidence had it been permitted to go to the jury. We only say that counsel brought himself sufficiently within the rules of evidence to allow it to go to the jury and let them deal with it in connection with all other facts and circumstances connected with the case.

The third assignment is as follows: The court erred in remarking in the presence of the jury while Bruce Shuff, a witness for appellant, was giving his testimony as follows: "Court: Well, I don't know what to think of it. I never in my life heard of this line of testimony. Now, because a man should fall down, that is absolutely not the act of an insane man that I ever heard of."

The court evidently did not mean to comment on the evidence of the witness, and the statement was certainly made in an unguarded moment. Jurors, as a rule, listen with a great deal of respect and attention to what the court says, and for that reason the trial judge should always be extremely careful in any remarks from the bench that can be construed into a comment or an opinion of the evidence of witnesses. We believe this rule is universal.

The fourth assignment is as follows: The court erred in refusing to permit the appellant to ask the witness John Dodson the following question: "I will ask you, taking into consideration your acquaintance with him and all of the opportunities you have had, what is your opinion as to whether he was a sane or insane man on the ninth day of November, 1901?"

It is shown by the record that prior to asking this question counsel for appellant had shown by the witness Dodson an acquaintance of six years with appellant. A portion of the time appellant had worked for witness and the first three years was with him more or less every week, and the last three years saw him four or five times a year, and prior to November 11, 1901, "I saw him passing backward and forward every day up to that date, passing by my house going to work."

We are of the opinion that the witness should have been permitted to answer this question. It had been shown that an acquaintance covering a period of six years just previous to the homicide had existed between witness and appellant. They had worked together a portion of the time and for a period—we are not informed how long—witness had seen appellant going to and from his work almost daily. Enough had been shown to give the appellant the benefit of the evidence. (*State v. Hurst*, 4 Idaho, 345, 39 Pac. 554; *State v. Larkins*, 5 Idaho, 200, 47 Pac. 945.)

The fifth assignment of error is as follows: The court erred in permitting the witnesses E. B. Hopkin, J. S. Finlay and R. M. Brann, W. J. Brann, Stewart Fuller and Freeman S. Rowe, called in rebuttal on the part of the state, to give sworn opinions as to the sanity of the appellant. Counsel for appellant urges that not one of these witnesses qualified himself to give an opinion upon the subject by showing such an acquaintance with the appellant and the necessary opportunities for so far observing him as to enable him to form an opinion that would or could be of any value.

The witness Hopkins testified: "Live in Black Bear, Idaho, and am a shift boss in the Standard mine. I know the defendant; I have known him personally since June, 1899. I traveled with him on the train from Missouri here, and have been with him more or less during his residence here. He never worked on the level I was shift boss on; he worked in the shaft some, but whether he was ever on shift when I was I don't remember. I have been with him quite a good deal."

J. S. Finlay testified he was shift boss at the Standard mine; "knew the defendant; he worked on my shift in the mine

about two or three months directly before the 11th of November last. I saw him several times every day; I directed the work he was doing."

R. M. Brann testified he had known the defendant from September before the homicide and up to the eleventh day of November—the day of the homicide. Witness was a timberman in the Standard mine, and the appellant helped him about two weeks.

W. J. Brann testified he is foreman of the Standard mine. Has known the appellant two years and possibly more; had visited appellant at his work in the mine; "he worked under me a month prior to the 1st of November, 1901; he worked in the shaft sometime before that in the forepart of the season."

Stewart Fuller testified he had known appellant two and one-half years, during which time appellant worked for him about two months in his house.

Freeman S. Rowe testified he came from Missouri with appellant and had known him about three years; had met him several times since and knew him up to November 11, 1901.

It is true as urged by counsel for appellant that none of the witnesses had had a very long or intimate acquaintance with appellant, as was the case in *State v. Hurst, supra.* It must be borne in mind, however, that the plea of insanity is always brought into the case by defendant, and the prosecution is placed at a disadvantage to procure evidence to rebut the plea. The law wisely provides that nonexpert witnesses may give their opinions as to the sanity or insanity of the accused. They are required to state the facts upon which they base their opinions, and from these facts, perhaps more than the opinion of the witnesses, the jurors form their conclusions. We find no error in this ruling of the court.

The sixth assignment is that the court erred in giving the jury instruction 6 requested by the state. Appellant only objects to and assigns as error the second paragraph of the instruction. The entire instruction is as follows: "In this case it is not claimed by the prosecution that the homicide charge was committed in the perpetration or attempt to perpetrate any other felony, but it is claimed that it is murder in the first

degree as being unlawful, malicious, willful, deliberate and pre-
meditated. In this class of cases the legislature leaves the jury
to determine from all the evidence before them the degree of
the crime, but prescribes for the government of their delibera-
tions the same test, which is, Is the killing willful, deliberate
and premeditated?" The unlawful killing must be accompanied
with a deliberate and clear intent to take life, in order to con-
stitute murder of the first degree. The intent to kill must be
the result of deliberate premeditation. It must be formed
upon the pre-existing reflection and not upon a sudden heat
of passion sufficient to preclude the idea of deliberation. The
part objected to follows: There need be no appreciable space
of time between the intention to kill and the act of killing;
they may be as instantaneous as successive thoughts of the
mind. It is only necessary that the act of killing be preceded
by a concurrence of will, deliberation and premeditation on
the part of the slayer; and if such is the case the killing is
murder of the first degree, no matter how rapidly these acts
of the mind may succeed each other or how quickly they may
be followed by the act of killing. In support of this conten-
tion, counsel for appellant cites *State v. Shafer,* 55 Pac. 526,
a Montana case. A careful reading of this case will disclose
that it does not support the contention of appellant. It is true
that the paragraph of the instruction under consideration and
the one considered by the Montana court are in precisely the
same language. It will be observed, however, that Chief Jus-
tice Pemberton, speaking for the court, says: "It will be seen
that this instruction omits malice aforethought from the defini-
tion of murder in the first degree. It is not contended that
malice aforethought is not an essential element of the crime
of murder in the first degree, but counsel for the state say the
instruction must be considered and construed together as a
whole, and as in other instructions the court properly define
murder in the first degree, the defect in the instruction under
consideration is thereby cured. This would be correct if the
instructions taken as a whole were harmonious and free from
contradictions. In this instruction the court not only omits
the words 'malice aforethought' entirely, but says: 'It is only

necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing is murder in the first degree.' We think this is a defective and erroneous definition of murder in the first degree, and not in harmony with other instructions given by the court defining the crime. It is unnecessary to say whether this error standing alone would be considered sufficient to authorize a reversal of the case. Nevertheless we cannot but disapprove of the instruction; it is a dangerous instruction and so well calculated to produce damage and prejudice, even when considered with all the other instructions, that it is difficult to say that it is not fatally defective."

. The instructions in the case before us are full and complete and in no wise contradictory, unless it can be said that the omission of the word "malice" in the latter clause of the one under consideration (the word "malicious" being used in the first paragraph) is an omission that might in some way prejudice the rights of the appellant. We are not prepared to say this, but are of the opinion that all instructions attempting to define murder in the first degree should clearly and distinctly set out all the elements required to constitute that crime.

The seventh assignment is as follows: The court erred in giving the jury instruction 6 requested by the state. That instruction reads as follows, to wit: "From these definitions the jury will see that any unlawful killing of a human being, with malice aforethought, is murder; but if nothing further characterizes the offense it is murder of the second degree. To constitute the higher offense, there must be superadded to the general definition above given willfulness, deliberation and premeditation. By willfulness is meant that it was of purpose, with the intent, that, by the given act, the life of the party should be taken. It must be deliberate and premeditated. By this it is not meant that the killing must have been conceived or intended for any particular length of time. It is sufficient if it was done with reflection and conceived beforehand. And in this view, as I have said before, the deliberate purpose to kill and the killing may follow each other as rapidly as successive im-

pulses or thoughts of the mind. It is enough that the party deliberate before the act—premeditate the purpose to slay before he gave the fatal blow. But while the purpose, the intent and its execution may follow thus rapidly upon each other, it is proper for the jury to take into consideration the shortness of such interval in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger, rather than to deliberation and premeditation which must characterize the higher offense. From what I have said you will see that the distinction between the two grades of offense is, that in murder of the first degree (unless it is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem), the killing must be deliberate and premeditated, whilst in murder of the second degree, the killing is not deliberate or premeditated. In the one case there is deliberate, premeditated, preconceived design, though it may have been formed in the mind immediately before the mortal blow was given, to take life. In the other case there is no deliberation, premeditation or preconceived design to kill. In both, however, the killing must have been unlawful and accompanied with malice."

To this instruction the appellant objects and alleges as error this paragraph: "The deliberate purpose to kill and the killing may follow each other as rapidly as successive impulses of the mind." We are of the opinion that this instruction, taken as a whole, clearly and correctly states the law.

The eighth assignment is based upon the seventh instruction given by the state, to wit: To establish a defense on the ground of insanity it must be clearly proved by the defendant by a preponderance of evidence given upon the trial.

In support of his contention counsel for appellant cites *Da... v. United States,* 160 U. S. 469, 16 Sup. Ct. Rep. 353, 40 L. ed. 499. This is a very able and exhaustive opinion by Mr. Justice Harlan. We have read it with much interest and care. It reviews some of the English cases as well as many of our own country. Justice Harlan cites with approval the instruction given by Justice Cox of the supreme court of the District of Columbia in the *Guiteau Case,* 10 Fed. 161-163, as follows:

"The crime there involves three elements, viz.: The killing, malice and a responsible mind in the murderer. But after all the evidence is in, if the jury, while bearing in mind both these presumptions that I have mentioned, i. e., that the defendant is innocent until he is proved guilty, and that he is and was sane, unless evidence to the contrary appears, and considering the whole evidence in the case, still entertain what is called a reasonable doubt on any ground (either as to the killing or the responsible condition of mind), whether he is guilty of the crime of murder as it has been explained and defined, then the rule is that the defendant is entitled to the benefit of that doubt and to an acquittal."

Continuing, Justice Harlan says: "It seems to us that undue stress is placed in some of the cases upon the fact that in prosecutions for murder the defense of insanity is frequently resorted to and is sustained by the evidence of ingenious experts whose theories are difficult to be met and overcome. Then it is said crimes of the most atrocious character often go unpunished and the public safety is thereby endangered, but the possibility of such results must always attend any system devised to ascertain and punish crime, and ought not to induce the courts to depart from principles fundamental in criminal law, and the recognition and enforcement of which are demanded by every consideration of humanity and justice. No man should be deprived of his life under the forms of law unless the jurors who try him are able upon their consciences to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged."

Counsel also cites *Coffin v. United States,* 156 U. S. 432, 15 Sup. Ct. Rep. 394, 39 L. ed. 481; *Commonwealth v. Pomeroy,* 117 Mass. 143.

Mr. Bouvier, volume 1, page 269, under the head of "burden of proof," dealing with the question of insanity in criminal cases, says: "In criminal cases on the twofold ground that a prosecutor must prove every fact necessary to substantiate his charge against the prisoner and that the law will presume innocence in the absence of convincing evidence to the contrary,

the burden of proof, unless shifted by legislative interference, will fall in criminal proceedings on the prosecuting party, though in order to convict he must necessarily have recourse to negative evidence." (1 Taylor on Evidence, sec. 344; *United States v. Gooding,* 12 Wheat. 460, 6 L. ed. 693.)

The burden of proof is throughout on the government to make out the whole case, and when the *prima facie* case is established, the burden of proof is not thereby shifted upon the defendant, and he is not bound to restore himself to that presumption of innocence in which he was at the commencement of the trial; citing a large number of cases.

Again, on page 809 the author says: "The effect of the plea of insanity has sometimes been controlled by the instructions of the court in regard to the burden of proof and the requisite amount. In most of the American states the better established doctrine now is that, whenever in the course of a trial evidence is produced showing that the defendant was of unsound mind, the burden of proof immediately rests upon the prosecution to show the contrary; the *onus* is first on the prisoner to show that the insanity exists, which being done, it immediately shifts upon the prosecution, and it is for it to show that insanity does not exist, or if it does, that it is not such as would prevent him from knowing and doing right."

Mr. Underhill in his late and very excellent work on Criminal Evidence, in discussing the question before us, at section 157, says: "The cases are inharmonious upon the question on whom does the burden of proof rest when insanity is in issue in a criminal trial. The prisoner's sanity is an essential and requisite ingredient in any crime with which he may be charged, for, if his mental soundness is not shown, there certainly cannot be a criminal intent present to render the act with which he is connected a crime. It is the general rule that the state has the burden of proving all the necessary ingredients of a crime, including the criminal intention, and this rule logically casts the burden of proving the sanity of an accused person upon the prosecution in the first instance. We must distinguish clearly between the burden of proof—that is, the obligation im-

posed upon a party who alleges a fact to establish it by proof—
and the mode and order of proof."

In support of this text the author cites the following cases:
*State v. Genz,* 57 N. J. L. 459, 31 Atl. 1039; *People v. Nino,*
149 N. Y. 317, 43 N. E. 853; *State v. Larkins* (1897), 5 Idaho,
200, 47 Pac. 945; *State v. Scott* (1897), 41 La. Ann. 253, 21
South. 271, 36 L. R. A. 721; *King v. State* (1897), 74 Miss.
576, 21 South. 235; *State v. Redemeier,* 71 Mo. 173, 176, 36
Am. Rep. 462; *Graves v. State,* 45 N. J. L. 347, 360, 46 Am.
Rep. 778; *Fisher v. State,* 30 Tex. App. 502, 18 S. W. 90;
*Ford v. State,* 71 Ala. 385; *State v. Felter,* 32 Iowa, 49, 54;
*People v. McCann,* 16 N. Y. 58, 69 Am. Dec. 642; *People v.
McElvaine,* 125 N. Y. 596, 26 N. E. 929; *State v. Coleman,* 20
S. C. 441, 454; *Polk v. State,* 19 Ind. 170, 81 Am. Dec. 382;
*Loeffner v. State,* 10 Ohio St. 598, 616; *Green v. State,* 88
Tenn. 614, 14 S. W. 430; *Smith v. State,* 19 Tex. App. 95, 111;
*Graham v. Commonwealth,* 16 B. Mon. (Ky.) 587; *People v.
Myers,* 20 Cal. 518; *People v. Bawden,* 90 Cal. 195, 199, 27
Pac. 204; *Commonwealth v. Gerade,* 145 Pa. St. 289, 296, 27
Am. St. Rep. 689, 22 Atl. 464; *Commonwealth v. Rogers,* 7
Met. (Mass.) 500, 41 Am. Dec. 458; *Dove v. State,* 3 Heisk.
348, 373; *Hopps v. People,* 31 Ill. 385, 83 Am. Dec. 231; *Langdon v. People,* 133 Ill. 382, 403, 24 N. E. 874. See, also, 7
Crim. Law Mag. 431.

In view of the numerous authorities cited and the careful
investigation we have given this question, we are not prepared
to say that if no other error existed in this case that we would
feel justified in awarding a new trial. The defendant on his
own motion brings the question of insanity into the case, and
it devolves upon him to create a reasonable doubt in the minds
of the jurors as to his responsibility at the time of the homicide. If he fails to do this the prosecution may rest on the
legal assumption that all men are sane and responsible for their
acts. If, on the other hand, he does succeed in creating a reasonable doubt in the minds of the jurors as to his sanity at
the time of the commission of the homicide, he is entitled to
the benefit of such doubt at the hands of the jurors, and the

responsibility of overcoming such doubt shifts to the prosecution.

The ninth error assigned attacks instruction 8 given by the court. It is as follows: "In entering upon an investigation of this offense, however, the jury should remember that the defendant has admitted the killing but sets up insanity. Therefore, the burden of proving this defense to the satisfaction of the jury is upon the defendant, because the law presumes that every man is sane and possesses a sufficient degree of reason to be responsible for his crime until the contrary is proved to the satisfaction of the jury, and that to establish a defense upon the ground of insanity it must be clearly proved that at the time of the commission of the act the party accused was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know he was doing wrong in respect to the very act with which he is charged."

Counsel for appellant in his brief says: "The same argument applies to this instruction as that made under error No. 8, to which reference is made." The views expressed by us in passing upon the eighth assignment will apply to this assignment.

The tenth assignment attacks the ninth instruction given by the court. The instruction reads: "The defense of insanity is a defense which may be and sometimes is resorted to in cases in which the proof of the overt act is so full and complete that any other means of avoiding conviction and escaping punishment seems hopeless. While, therefore, this is a defense to be weighed fairly, fully and justly, and when satisfactorily established must recommend itself to the sense of humanity and justice of the jury, you are to examine it with care, lest an ingenious counterfeit of this mental infirmity shall furnish immunity to guilt."

In all other matters except that of insanity the defendant is entitled to every reasonable doubt. It is a well-settled principle that trial courts should be guarded from any expressions in the presence or hearing of the jury that can in any way be construed into an expression of their views on any evidence that may be before the jury. (*Aszman v. State*, 123 Ind. 347, 24 N. E.

123, 8 L. R. A. 33; *Dawson v. State*, 62 Miss. 241; 2 Thompson on Trials, sec. 2433.)

An inspection of the above authorities will disclose that it was error to give this instruction. The last paragraph of the instruction was misleading, also, and should not have been given.

The eleventh assignment is based upon the alleged error in giving instruction No. 13. It reads: "The jury are instructed as a proposition of law that statements made by counsel for the defendant in their presence and in the conduct of the trial as to the commission, by the defendant, of the offense alleged in the indictment are statements in so far as they are admissions against the defendant to be considered by the jury in regard to the question as to whether or not the defendant is responsible, in this case, for the commission of the offense alleged against him in the indictment."

We know of no authority to support this instruction, nor do we think any can be found. It is a fundamental rule, as we understand it, that the rights of a defendant cannot be prejudiced by any statement made by his counsel or any admissions he may attempt to make. Indeed, the law is so careful of the rights of a party charged with crime, that even admissions made by himself to an officer cannot be used against him unless it be satisfactorily shown that such statements or admissions were made entirely voluntarily and without any hope of reward or promises of immunity from the officer. (*Nels v. State*, 2 Tex. 280; *Williams v. State* (Tex. Cr. App.), 44 S. W. 1103; *Clayton v. State*, 4 Tex. App. 515.)

The twelfth error assigned is: "The verdict was contrary to the law and the evidence."

We have disposed of all the alleged errors of law occurring on the trial, and as the case must go back to the lower court for further hearing, we are not called upon to pass upon the sufficiency of the evidence to support the verdict.

The judgment is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

Sullivan, C. J., and Ailshie, J., concur.