[Crim. No. 1860. In Bank.—December 14, 1914.]

## THE PEOPLE, Respondent, v. LOUIS BUNDY, Appellant.

CRIMINAL LAW—MURDER—MOTION IN ARREST OF JUDGMENT—ORDER DENYING NONAPPEALABLE.—No appeal lies from an order denying a motion in arrest of judgment, but the order may be reviewed on the appeal from the judgment. The motion is held to be without merit in this case.

ID.—DEFENSE OF INSANITY—VERDICT SUPPORTED BY EVIDENCE.—In this prosecution for murder, where the defendant admittedly killed the deceased but pleaded insanity, it is held that the evidence was sufficient to sustain the verdict on this issue.

ID.—WHEN INSANITY A DEFENSE.—In order that insanity may be available as a defense it must appear that the defendant was so deranged mentally when the act with which he is charged was done by him that he was not conscious of the wrongful nature of the act and did not know that it was wrong and criminal.

Id.—Instructions—Party Offering Immaterial.—In a prosecution for murder, the omission of the judge to state which instructions were given at the request of the prosecution and which at the request of the defendant is commendable rather than blameworthy.

Id.—Cautionary Instruction on Insanity—When Proper.—In a prosecution for murder, instructing the jury, prior to giving defendant's instructions on insanity, substantially that, while the defense of insanity is to be weighed fully, fairly, and justly, and when satisfactorily established is one that must commend itself to the sense of humanity and justice of the jury, they must examine it with great care, lest an ingenious counterfeit of this mental infirmity shall furnish immunity from guilt, is not erroneous on the ground that it practically nullifies the effect of defendant's instructions.

Id.—Motive—Irresistible Homicidal Tendency—When Instruction Not Prejudicial.—An instruction, which the jury in a prosecution for murder could not reasonably have understood otherwise than as telling them substantially that they could not safely infer the existence of a powerful and irresistible influence of homicidal tendency under which the defendant was acting from the lack of apparent motive alone, is not prejudicial, where, according to defendant's admissions made before the trial, he killed the deceased because, having just violently assaulted and robbed him, he was afraid the deceased would inform against him.

Id.—Construction of Section 13, Article I of Constitution—Accused may Voluntarily Furnish Evidence Against Himself.— While, under section 13 of article I of the constitution, no person can be compelled to divulge to another facts to be used as a basis for testimony on his trial in a criminal case, there is nothing in said provision which prohibits such person from furnishing evidence against himself if he so chooses.

Id.—Evidence—Opinions on Defendant's Sanity—Defendant may Voluntarily Submit to Examination Without Counsel's Knowledge.—In a prosecution for murder, there is no error in admitting the testimony of certain doctors called by the prosecution to give their opinions on the question of defendant's sanity, the opinions having been formed from personal examinations made of the defendant, without objection on his part, although in the absence of and without notice to his counsel. There is nothing in the law that makes notice or knowledge to counsel essential to a voluntary disclosure of facts by an accused person.

APPEAL from a judgment of the Superior Court of Los Angeles County and from orders refusing a new trial and arrest of judgment. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Earl Rogers, and Frank E. Dominguez, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

ANGELLOTTI, J.—The defendant was convicted of murder in the first degree and adjudged to suffer death. He appeals from the judgment, and also from orders denying his motion for a new trial and his motion in arrest of judgment.

As we have often pointed out, no appeal lies from an order denying a motion in arrest of judgment, but the order may be reviewed on the appeal from the judgment. It is not claimed that the order was erroneous in this case, and manifestly the motion was entirely without merit.

It is not claimed that the evidence was in any way insufficient to warrant the verdict that was rendered, and in view of the facts shown by the record no such claim could reasonably be made. Unless defendant was insane at the time he killed Harold Ziesche, which admittedly he did, he was clearly and indisputably guilty of murder in the first degree. The defense interposed was insanity. The evidence was sufficient to sustain the verdict on this issue. It is to be remembered that in order that insanity may be available as a defense it must appear that the defendant was so deranged mentally when the act with which he is charged was done by him that he was not conscious of the wrongful nature of the act and did not know that it was wrong and criminal. As said by the trial judge in his instructions to the jury: "If he has reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing, knowledge and consciousness that what he is doing is wrong and criminal and will subject him to punishment, he must be held responsible for his conduct."

Certain suggestions were made on the oral argument as to the instructions given by the trial judge to the jury. We find nothing therein that would warrant a reversal. The omission of the judge to state which instructions were given at the request of the prosecution and which at the request of the defendant was commendable rather than blameworthy. No reason appears to us why the jury should be told which of the parties requested a requested instruction given by the court, or that it was requested by either party. The judge

gave certain instructions cautioning the jury substantially that while the defense of insanity was to be weighed fully, fairly, and justly, and when satisfactorily established is one that must commend itself to the sense of humanity and justice of the jury, they must examine it with great care, lest an ingenious counterfeit of this mental infirmity shall furnish immunity to guilt. It is admitted that no instruction was given in this connection that would warrant a reversal, in view of previous decisions of this court, but it is suggested that the giving of such cautionary instructions prior to the giving of any of defendant's instructions on insanity "practically nullifies the effect of defendant's instructions." We see no force whatever in this claim. The instructions given in regard to what the court called "moral insanity" were correct, and the evidence was such as to make the giving of these instructions advisable and proper. The same is true as to the instructions as to "partial insanity." There was no conflict in the instructions given upon this subject. The instruction upon the subject of lack of apparent motive and the supposed claim of defendant's counsel based thereon that defendant must have been acting under a powerful and irresistible influence of homicidal tendency, was not happily worded in all respects, and probably should not have been given at all. But we are unable to see that any prejudice could have been caused defendant by the giving of this instruction. The jury could not reasonably have understood this instruction otherwise than as telling them substantially that they could not safely infer the existence of such an influence from the lack of apparent motive *alone*, which is entirely true. A reading of the evidence on the trial discloses no case of lack of apparent motive. According to his own admissions made before the trial, defendant killed young Ziesche, because having just violently assaulted and robbed him, he was afraid that Ziesche would inform against him. As we have said, the instruction might well have been omitted, but it was not prejudicial.

The ground mainly urged for reversal is that the trial court improperly allowed two doctors called as witnesses by the district attorney to give their opinions on the question of defendant's sanity. The opinion of each of these witnesses, who were sufficiently shown to be experts on the subject, was based upon examinations, both physical and mental, of the defendant by the witness. Dr. Reynolds examined him twice and

Dr. Orbison once. Dr. Reynolds's second examination was had three days before he testified and Dr. Orbison's two days before the trial commenced. At the time of the second examination by Dr. Reynolds and the examination by Dr. Orbison defendant had counsel, and they were not notified that any examination was to be had and had no knowledge thereof. Defendant was in custody, confined in the county jail, where the examinations were had. He was informed by Dr. Orbison prior to his examination that he, Orbison, was employed by the district attorney to make an examination. Dr. Reynolds had first examined him the day after his arrest, and when asked by the doctor if he objected to being examined said, "No, sir." Dr. Reynolds examined him very thoroughly on this occasion, and on the second examination simply made a few tests, tested his sense of smell, his sense of taste, and his eyesight. The first examination by Dr. Reynolds was not made at the instance of the authorities, but at the request of a newspaper editor. Defendant made no objection whatever to being examined at any time, and conversed very freely with each of the doctors. The claim of counsel is that by allowing the doctors to give their opinions based upon their examinations, defendant was compelled to be a witness against himself, in violation of section 13, article I of the constitution, which provides that "No person shall . . . be compelled in any criminal case to be a witness against himself . . ." (See, also, Pen. Code, sec. 1323.) It may freely be admitted that in view of this provision, one accused of crime may not be *compelled* to divulge to another, to be used by that other as basis for his testimony on the trial, facts which he has a right to hold secret. Whether one accused of crime can properly be compelled to submit to an examination by medical experts for the purpose of determining whether or not he is of sound mind, is a question that it is not necessary to discuss here. There is nothing in the constitutional provision relied on that prohibits such a person from furnishing evidence against himself if he chooses to do so. He *shall not be compelled* to do so, but whatever fact he may disclose without force or compulsion of any kind, or whatever testimony he may voluntarily give is not within the inhibition. (Jones on Evidence, sec. 400.) No decision brought to our attention holds to the contrary. And with special reference to examinations for the purpose of ascer-

taining whether an accused is of unsound mind, it is said in 4 Wigmore on Evidence, sec. 2265, that "the use of the accused's utterances for forming a witness' opinion as to sanity is a dubitable case only when compulsion has been resorted to." Perhaps utterances induced by fraud might likewise fall within the dubitable cases. In the case at bar an appellate court would certainly not be warranted by the record in holding that any force or compulsion was used, or that the accused did not voluntarily submit to the examinations. There was nothing in the nature of fraud on the part of the medical men, the authorities or anybody else. The fact that defendant's counsel were not notified of the proposed examinations and had no knowledge thereof in no way affects the question of the admissibility of the evidence complained of. There is nothing in the law that makes notice or knowledge to counsel essential to a voluntary disclosure of facts by an accused person. Nor does the fact that the defendant was only just eighteen years of age materially affect the question. For the purpose of a determination of the question whether the trial court erred in the admission of this evidence, that court must be assumed here to have held upon the testimony that no force or compulsion was used and that the defendant voluntarily submitted to the examinations. The testimony was such as to fully support such a conclusion.

A careful examination of the record discloses no reason to doubt that defendant had a fair and impartial trial. No error was committed that can be held to have prejudiced him. Of course, learned counsel for defendant by his suggestion that the penalty of death should not be inflicted for a crime committed by one who at the time of such commission was not quite eighteen years of age, does not mean to intimate that this court has power to set aside or modify the judgment on any such ground. It is needless to say that this court has no such power.

The appeal from the order denying the motion in arrest of judgment is dismissed. The judgment and order denying a new trial are affirmed.

Sloss, J., Shaw, J., Henshaw, J., Melvin, J., Lorigan, J., and Sullivan, C. J., concurred.