227 P.2d 582

**STATE v. POWELL et al.**

**No. 7687.**

Supreme Court of Idaho.

Feb. 1, 1951.

Rehearing Denied Feb. 27, 1951.

Hawley & Marcus, Boise, Dellmore Lessard, Portland, Or., for appellants.

The trial court abused its discretion by sentencing each of the defendants to death, and this court has the power to modify such sentence. State v. Behler, 65 Idaho 464, 146 P.2d 338; State v. Sprouse, 63 Idaho 166, 118 P.2d 378; State v. Ramirez, 34 Idaho 623, 203 P. 279, 29 A.L.R. 297; State v. Lovejoy, 60 Idaho 632, 95 P.2d 132.

Robert E. Smylie, Atty. Gen., J. R. Smead, Asst. Atty. Gen., James W. Blaine, Prosecuting Atty., Boise, for respondent.

PORTER, Justice.

For convenience, appellants herein will be hereinafter referred to as defendants. On May 9, 1950, defendants were arrested in Ada County and accused of the murder of one Newton N. Wilson. On May 18, they waived preliminary hearing and were bound over to the district court. On May 25, an information was filed in the district court in Ada County, charging defendants jointly with the crime of murder in the first degree. By such information it was alleged that defendants did kill and murder one Newton N. Wilson on May 9, 1950, in Ada County, Idaho.

On May 26, 1950, defendants were present in court with their counsel and were duly arraigned. Thereupon the court continued further hearing in the matter until June 1. On June 1, being present in court with counsel, each defendant entered his plea that he was guilty as charged in the

information. Thereupon the court continued further proceedings until June 15.

On June 14, 1950, defendants and counsel being present in open court, the prosecuting attorney moved to amend the information in minor particulars which motion was agreed to by counsel for defendants. Defendants were then arraigned on the amended information. Each defendant waived the statutory time within which to plead and stated his desire to plead forthwith. Each defendant then entered his plea that he was guilty as charged in the information as amended. Each defendant then waived the statutory time for sentence and requested an immediate sentence. Thereupon the court fixed June 15, 1950, at 10:00 o'clock A.M. as the time for pronouncement of sentence.

On June 15, 1950, at the time fixed for pronouncement of sentence, the court stated:

"Gentlemen, this is the time set for sentence in this case of State vs. Troy Powell and Ernie Walrath.

"At this time, in accordance with the statute, I desire to determine the degree of the crime, and also any facts or circumstances in aggravation or mitigation of the offense."

It is evident that all parties had foreknowledge of this hearing. The state offered numerous exhibits, consisting of photographs of the scene of the crime and physical objects connected therewith. The state called seven witnesses. Defendants called nine witnesses including defendants, their parents and a psychiatrist. At the close of the hearing the court rendered judgment that each of the defendants was guilty of murder in the first degree and imposed sentence of death upon each defendant. From such judgment, defendants have appealed to this court.

The evidence adduced at the hearing disclosed the background of each defendant and the details connected with the commission of the crime. In order to weigh and understand the questions raised on this appeal, it is necessary to have in mind the facts developed at such hearing.

Defendant, Powell, was reared in the vicinity of Emmett. He was 20 years old on January 5, 1950. He attended high school for a portion of one year. When he was 18 years of age, he was sent to the penitentiary in Oregon for the theft of an automobile. He was incarcerated for about nine months and upon his release, in September, 1949, returned to Boise where his parents were living. While in the Oregon Penitentiary, he became acquainted with defendant, Walrath. In Boise, he met and married the sister of defendant, Walrath. This was his second marriage.

Defendant, Walrath, was reared in the vicinity of Bend, Oregon. He was 19 years of age on February 25, 1950. He attended high school until the middle of his senior year. When he was 16 years of age, he was sent to the Oregon Penitentiary

for the burglary of a service station. He was later paroled but violated his parole and was returned to the penitentiary. He served about one year. He was again paroled in May, 1949, and came to live in Boise with his mother and family, the father remaining in Bend, Oregon. While in the penitentiary, he became acquainted with defendant, Powell.

In Boise, defendants renewed their acquaintanceship and embarked upon a career of crime. They committed in the vicinity of Boise, seven admitted burglaries. Defendant, Walrath, told the witness, Barbara Cooper, that defendants committed the burglaries just to keep in practice.

The deceased, Newton N. Wilson, was a widower. He ran a small grocery store at 1401 East State Street, Boise. He lived alone in the rear of the grocery store. He was 65 years of age. He was acquainted with defendant, Powell, and thought well of him, as Powell had done deceased a small favor.

Shortly prior to the commission of the murder, defendant, Powell, was in debt, had been working only a few weeks and was pressed for money. Defendants began planning to commit some crime in order to raise money. About ten days prior to May 8, 1950, while in an automobile, they stopped along the road and picked up some rocks with which to make a sap. Defendant, Walrath, testified that they made the sap "to have a bludgeon of some sort, to be used for what you would call a strong-arm robbery or roll-'em job." Thereafter, they discussed the robbery of the deceased, as they thought he had money hidden in his grocery store.

At about 9:00 o'clock P.M. on May 8, defendants were riding around in an automobile. They picked up Barbara Cooper, the girl friend of defendant, Walrath, at her home and then went to the home of defendant, Powell. Powell and wife resided two doors east of the grocery store. About 20 minutes later, defendants went to the grocery store for the purpose of robbing deceased. Powell was armed with the sap and Walrath was masked and armed with a revolver procured in one of the Boise burglaries. Powell stayed outside the store as he was known to deceased. Walrath went to the door of the store and knocked with the intention of holding up deceased when he answered the door. However, due to the screen door being locked, their plan miscarried and Walrath simply asked permission to put in a telephone call. Defendants then returned to the Powell home.

After some discussion between the defendants, Mrs. Powell and Barbara Cooper, defendants decided to again attempt the robbery. They returned to the grocery store and asked permission to put in another telephone call. They talked with the deceased who was sitting in an easy chair. They called his attention to an article in a newspaper. As deceased bent over to read the article, at a nod from Powell, Wal-

rath struck deceased on the head more than once with the revolver. Then Powell struck deceased two or three times with the sap. As deceased appeared to be still conscious, Walrath began striking deceased in the face with his fists. Defendants then stretched deceased out on the floor, took his wallet and proceeded to search the premises. They procured only $12.50. While searching the kitchen, Walrath found a butcher knife. He knelt over deceased and began stabbing him in the back. Deceased was stabbed seven times and the butcher knife left in his back. In his sworn statement, Walrath claimed that Powell participated in the stabbing, but at the hearing, testified that Powell did not so participate.

Defendants returned to the Powell home and there divided the money and discarded their bloody clothes. Defendants and the two women got into an automobile and after purchasing some beer, proceeded up the highway toward Horseshoe Bend. They turned off the highway on to a side road and at a distance of about 15 miles from Boise, hid the bloody clothes and other articles connected with the murder and then returned to Boise.

The brief of defendants-appellants does not contain a distinct enumeration of the several errors relied on, as provided by Rule 52 of the Supreme Court. However, in view of the gravity of the case, we have determined to review and consider all questions raised or suggested by such brief.

Defendants urge that the actions of the trial judge were arbitrary and prejudicial in that he allegedly was impatient with and limited the defendants in their presentation of their evidence in mitigation. The statutes under which the hearing was held, are Sections 19–2502, I.C. and 19–2515, I.C. Section 19–2502, reads as follows: "Upon a plea of guilty of a crime distinguished or divided into degrees, the court must, before passing sentence, determine the degree."

Section 19–2515, is as follows: "After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

The above statutes provide for a summary hearing. The hearing is not strictly a trial. Its extent is largely at the discretion of the court. It is intended for the enlightenment of the court in pronouncing sentence. State v. Lovejoy, 60 Idaho 632, 95 P.2d 132; State v. Arnold, 39 Idaho 589, 229 P. 748; People v. Gilbert, 25 Cal. 2d 422, 154 P.2d 657; 15 Am.Jur. 168; Annotation, 77 A.L.R. 1211. An examination of the rulings in limitation of defendants' evidence discloses that the pro-

posed lines of testimony were remote, immaterial and could be of no practical assistance to the court.

■ Defendants assert that the introduction of the many pictures of the body and of scenes at the place of the crime, some of which pictures were in color, tended to prejudice the court. No objection was made to the introduction of such pictures and no reason is made to appear why such pictures would not have been admissible at a trial by jury. There is no claim made that the pictures did not truly illustrate the scenes they depicted. We find no error in their admission in evidence.

It is not disputed that the evidence shows that the crime was murder in the first degree. Likewise, the evidence shows that the crime was one of aggravated brutality. There were no mitigating circumstances in connection with the actual perpetration of the murder. It was not committed in the heat of resistance by the deceased, nor was it perpetrated in an attempt to escape. The stabbing was done to insure the silence of a witness who could identify defendants. The only circumstances urged in mitigation are the ages and backgrounds of defendants. Their ages are undisputed. Their respective backgrounds appear to have been fairly presented to the court by the nine witnesses offered by defendants.

■ Defendants urge that the trial court abused its discretion by sentencing each of the defendants to death and that this court has the power to modify such sentences.

Upon a plea of guilty, the trial judge is clothed by the statute with the power and duty of fixing the punishment. It is within his sound discretion to determine whether the punishment shall be life imprisonment or death. Unless such discretion is abused, it will not be disturbed by this court. State v. Arnold, supra.

In State v. Ramirez, 34 Idaho 623, 203 P. 279, 29 A.L.R. 297, it was held that this court, in furtherance of justice, has the power to modify and reduce a judgment of capital punishment fixed by a jury to imprisonment for life; and that if the evidence be not sufficient to warrant the extreme penalty of the law, then such punishment is excessive and its pronouncement by judge or jury is an abuse of discretion. The power of this court to modify and reduce a judgment of capital punishment to imprisonment for life, in furtherance of justice, was reaffirmed in State v. Behler, 65 Idaho 464, 146 P.2d 338. However, in State v. Ramirez, supra, it was recognized that before this court could act, there must appear an abuse of discretion. In State v. Behler, supra, Justice Budge, the author of the opinion in State v. Ramirez, supra, in his dissenting opinion, called attention to this fact. See also, 29 A.L.R. 328; 89 A.L.R. 314.

Defendants contend that it was an abuse of discretion to impose the death penalty on youths who have not yet reached their majority. Defendants point out correctly so far as we can determine, that no one as

young as these defendants has ever been executed in Idaho. Where age has been considered in determining the penalty to be inflicted, it has been generally accompanied by some other mitigating element such as extreme youth, subnormal mind or influence of older companions. In People v. Bundy, 168 Cal. 777, 145 P. 537, the Supreme Court of California held that it had no power to modify or set aside a judgment imposing the death penalty for murder in the first degree merely on the ground that accused at the time of the homicide was not 18 years of age. The evidence in this case discloses that each of defendants is experienced and hardened in crime. By their own statements they have committed many felonies and were preparing for other crimes of violence. The murder of deceased was not brought about by the immaturity of defendants.

Defendants call attention to their incarceration in the Oregon Penitentiary and the influence of such environment upon them, saying on page 14 of their brief, "When they were mere boys they were thrown into prison with hardened criminals, making it inevitable that they should acquire and assimilate the vicious and lawless concepts and philosophies of older criminals." Such background may tend to explain but does not lessen the present criminal disposition of defendants with which the court is concerned.

It is urged that each of defendants is abnormal. Doctor M. M. Campbell, the psy-chiatrist called by defendants, testified that each of defendants was not insane in the legal sense, and that defendant, Walrath, and, in effect, defendant, Powell, knew the difference between right and wrong. The ability to distinguish right from wrong is the test of accountability to the law in this state. State v. Van Vlack, 57 Idaho 316, 65 P.2d 736; State v. Behler, supra.

Doctor Campbell testified that defendant, Powell, has a slightly above average intelligence rating; that personality tests show that in essence, Powell is an undeveloped character; that he acts somewhat in the way a child would act, with little regard for consequences of his acts; that he is easily led, somewhat impulsive and attracted by a more dominating type of personality. The Doctor further testified that defendant, Walrath, has an intelligence quotient unusually high; that personality tests show him to be a highly egocentric, selfish person who disregards the rights of others, who indulges exclusively in self-love and self-aggrandizement, who commits acts impulsively, regardless of the harm or hurt that might come to others; but that he has the power to choose between right and wrong. The whole testimony of Doctor Campbell, taken in connection with the other evidence, was not sufficient to show such abnormality in either defendant as would justify us in saying that for such reason the trial court abused its discretion in imposing the death penalty.

138

Finally, defendants urge that capital punishment has been abolished in many states and foreign countries; that such action reflects the modern view; and infer that such fact should be given consideration here. Such argument would be more appropriate if addressed to the Legislature rather than to the court. The question of capital punishment lies in the conscience of the citizens of Idaho. They have expressed their will on the subject through the medium of legislative enactment. It is not for the court to question their wisdom.

We have purposely recited the preliminary steps taken in this case prior to the pronouncement of sentence to show that defendants were not required to enter their pleas hastily or without due time for thought and consideration. Their parents were available for guidance and advice. They were represented at all times by competent counsel. The language of this court in State v. Arnold, 39 Idaho at page 604, 229 P. at pages 752–753, is appropriate to the situation here: "Appellant knew he had committed an atrocious murder, had every reason to believe he would be convicted, and was speculating whether his chance of escaping the death penalty would be better upon a plea of not guilty and trial by jury, or upon a plea of guilty and judgment by the court. In this he was not misled ar deprived of any right. The judgment should not [be] set aside merely because he is disappointed in the result which he hoped would follow."

 We find nothing in the evidence adduced at the hearing or otherwise in the record from which this court can in good conscience say that the trial court abused the discretion vested in it by imposing the death sentence upon each of defendants. The judgment is affirmed.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.