289 P.2d 603

STATE of Idaho, Plaintiff-Respondent,

v.

Joe IVERSON, Defendant-Appellant.

No. 8183.

Supreme Court of Idaho.

Oct. 5, 1955.

Rehearing Denied Nov. 28, 1955.

Charles F. Reddoch, Charles S. Stout, Boise, for appellant.

Graydon W. Smith, Atty. Gen., J. Clinton Peterson, Asst. Atty. Gen., Blaine F. Evans, Asst. Pros. Atty., Boise, Cecil D. Hobdey, Pros. Atty., Gooding, for respondent.

ANDERSON, Justice.

This case was before us previously on the application of the defendant for issuance of a certificate of probable cause and for release of the defendant on bail pending appeal. State v. Iverson, 1954, 76 Idaho 117, 278 P.2d 205.

The present appeal is from the judgment of conviction of the defendant of the crime of lewd or lascivious conduct with a minor or child under the age of sixteen years. I.C. sec. 18–6607.

January 3, 1954, about one o'clock in the afternoon, the girl involved, who was 13 years of age, was on her way home from church when the defendant, age 15, drove up and asked her to go for a ride with him. The evidence is conflicting as to whether or not she voluntarily got into the car or whether he forced her in. They rode around for some time, and finally stopped on a desert road near the Malad River, where defendant made improper advances, and the girl jumped out of the car and ran. The defendant pursued her, grabbed her and choked her until she lost consciousness. He then removed all of her clothing and took improper liberties with her by either committing, or at least attempting to commit, sodomy. Thereafter he dragged her nude body over rough and rocky terrain and threw her into a 20 or 25-foot canyon in the icy Malad River. She regained consciousness temporarily during part of the time he was dragging her and resisted him, and then again lost consciousness. Sometime after being thrown on the ice in the river she regained consciousness, and while nude and in a dazed condition wandered near the railroad track about four and a half miles west of Gooding, where she was picked up by an eastbound train and taken to town, and thereafter to a hospital. Her body was severely battered and bruised, and she was for some time unable to talk. She later identified the defendant as her assailant. He had returned to his home, where he was later arrested, and took the officers to the scene of the crime about 2 a. m. January 4, 1954, and showed them where he had left the girl's clothes.

After being found sane at a sanity trial, appellant was convicted, and hence this appeal.

Appellant in his argument of this case presented five main points upon which he asked for reversal of the judgment of conviction. First, he urged that refusal of the district court to grant his motions for

change of venue, based upon prejudice against him within the county, was erroneous. He made two such motions. One was made March 27, 1954, which he supported by several affidavits and newspaper accounts. March 31, 1954, the state filed counter-affidavits. The motion was denied, and a sanity hearing (which is not a part of the present record) was held before a jury beginning April 7, 1954, and the defendant was found to be sane. Thereafter, on April 27, 1954, defendant filed another motion for change of venue based upon the same ground as the first one, and filed the affidavits of many more individuals, the contents of which were virtually identical with the first ones. April 28, the state filed an answer to the motion, re-including all of its old counter-affidavits, but did not file additional ones. The court, after considering the matter, denied the motion, and the case was tried on its merits May 11, 1954.

This court, in the case of State v. McClurg, 50 Idaho 762, 300 P. 898, 902, upheld the trial court's refusal of a change of venue under similar circumstances. In that case, as in the present one, the defendant had sought a change of venue on the ground " 'public sentiment and prejudice is too strong against the defendant' " in the county; the defendant submitted affidavits to that effect; it was alleged prejudice had been created by newspaper accounts of the crime and by widespread discussion in the county, and that 55 jurors were excused for cause on voir dire examination. The court in the McClurg case stated:

"As has often been held by this court, the granting of a motion for a change of venue on motion of the defendant in a criminal action is largely a matter resting in the sound discretion of the trial judge, and his denial of the motion will not authorize a reversal of a judgment of conviction where it manifestly appears from the record that defendant had a fair and impartial trial and no trouble was experienced in obtaining an impartial jury. [Citing cases.]

"In the case at bar, the trial judge was acting within his sound legal discretion in denying the motion."

A review of the record in the case now before us convinces us that the defendant had a fair and impartial jury, and that the denial of the application for change of venue is not reversible error.

Second, defendant contends that the evidence is insufficient to sustain the verdict and judgment, in that there is no proof of intent to commit the offense charged. The appellant contends the boy was motivated only by curiosity—by a desire to see the victim in the nude—and that the offense was therefore not in violation of I.C. sec. 18-6607. I.C. § 18-115 provides:

"The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused  *  *  *."

This court, in reference to I.C. sec. 18–6607, involved in this case, stated in the case of State v. Madrid, 74 Idaho 200, 259 P.2d 1044, 1047:

"The naked body of the victim need not be touched to constitute a violation of this statute.

The evidence in the present case is uncontradicted that the defendant choked his victim into unconsciousness, removed all of her clothing, and took indecent liberties with her while she was unconscious. Defendant made a statement to this effect to a deputy sheriff of the county wherein the offense occurred, and told the deputy where he had left the girl's clothing. His own psychiatrist testified that he stated he wanted to see the girl's breasts and also wanted to see her nude body. The girl's condition when found disclosed a redness and cracks in her rectum. Dr. Fredrick E. Barrett, who examined and treated the girl, testified:

" * * * The rectum had been dilated, it was violently reddened. The anus had several small cracks where it was bleeding slightly.

"Q. And what could have caused the condition that you found in it, the anus and rectum, doctor? A. Being dilated in any manner, blunt object, stick, finger, anyway.

"Q. Would it require an *assertion* of some type? A. Yes."

This, together with consideration of the other facts and circumstances brought out at the trial, amply and sufficiently sustains the verdict and judgment of conviction. State v. Johnson, 74 Idaho 269, 261 P.2d 638.

Third, defendant contends that instruction No. 13 was erroneous. This instruction reads as follows:

"The law presumes every man to be sane and to possess a sufficient degree of reason to be responsible for his crime until evidence is presented sufficient to raise in the minds of the jury a reasonable doubt as to the sanity of the accused.

"This presumption of sanity prevails only until a reasonable doubt is cast upon it. The presumption of sanity merely relieves the prosecution from introducing proof that the defendant was sane, until that issue is raised by evidence creating a reasonable doubt as to the sanity of the accused.

"If such evidence tending to establish insanity is presented, thereupon the ultimate burden of convincing the jury beyond a reasonable doubt that defendant was sane within the legal test of responsibility is on the prosecution."

The court, in the case of State v. Shuff, 9 Idaho 115, 131, 72 P. 664, 670, in stating the law on this point, said:

"The defendant on his own motion brings the question of insanity into the

case, and it devolves upon him to create a reasonable doubt in the minds of the jurors as to his responsibility at the time of the homicide. If he fails to do this, the prosecution may rest on the legal assumption that all men are sane and responsible for their acts. If, on the other hand, he does succeed in creating a reasonable doubt in the minds of the jurors as to his sanity at the time of the commission of the homicide, he is entitled to the benefit of such doubt at the hands of the jurors, and the responsibility of overcoming such doubt shifts to the prosecution."

We think the above instruction complies with the law as laid down in the above case. See also State v. Tharp, 48 Idaho 636, 284 P. 201.

█ Appellant cites as error the refusal to give his requested instruction No. 5. Instruction No. 13 above quoted substantially covers it except that defendant's requested instruction states the presumption of sanity "may be overcome by *evidence tending to prove* insanity existed at the time of the commission of the alleged offense. When such evidence is introduced, then the presumption of sanity ceases." The court's instruction is to the effect the presumption of sanity exists "until evidence is presented sufficient to raise in the minds of the jury a *reasonable doubt* as to the sanity of the accused." (Emphasis added.)

The court's instruction appears to follow more closely the rule in State v. Tharp, 48

Idaho 636, 284 P. 201, and State v. Shuff, 9 Idaho 115, 72 P. 664, 670:

"The defendant on his own motion brings the question of insanity into the case, and it devolves upon him to create a reasonable doubt in the minds of the jurors * * *."

The jury knew from instructions Nos. 13 and 14 and all the other instructions that if a reasonable doubt was cast on the presumption of sanity, that presumption no longer prevailed, and the burden of proving sanity beyond a reasonable doubt then rested on the state.

█ Fourth, appellant contends instruction No. 17 is erroneous. This instruction is as follows:

"Insanity, as the word is used in these instructions, means such a diseased and deranged condition of the mental faculties of a person as to render him incapable of knowing the nature and quality of his act and of distinguishing between right and wrong in relation to the act with which he is charged.

"The test of accountability is this: Did the party have sufficient mental capacity to appreciate the character and quality of the act? Did he know and understand that it was a violation of the rights of another, and in itself wrong? If he had the capacity thus to appreciate the character and to comprehend the probable or possible con-

sequences of his act, he was sane under the law, and is responsible to the law for the act thus committed."

An instruction nearly identical with this one was given in the case of State v. Behler, 65 Idaho 464, 146 P.2d 338, which was approved by this court, and we therefore find no error in this instruction.

■ The fifth and last point argued by appellant is that instruction No. 22 was erroneous. This instruction reads:

"The law of Idaho does not recognize the plea of irresistible impulse as a defense to crime. If a person is conscious of, knows and appreciates the nature and wrongfulness of his act, then he does the act at his peril, and the plea of irresistible impulse will not avail him."

This court recently, in the case of State v. Powell, 71 Idaho 131, 137, 227 P.2d 582, 586, stated:

"* * * The ability to distinguish right from wrong is the test of accountability to the law in this state. State v. Van Vlack, 57 Idaho 316, 65 P.2d 736; State v. Behler, supra."

In view of the established law in this state on this point, we are of the opinion the above instruction was correctly given.

■ In addition to the above alleged errors, the defendant contends that certain exhibits, being photographs showing the condition of the girl's body, the location of the crime and surrounding territory, some of which pictures were in color, were prejudicial to him. These exhibits were supported by testimony that the photographs were true and correct representations of the objects portrayed, and were properly admitted as exhibits in corroboration of the victim's testimony. State v. Powell, 71 Idaho 131, 136, 227 P.2d 582, 585; State v. Linebarger, 71 Idaho 255, 232 P.2d 669.

Appellant contends that his life sentence is excessive, and cruel and unusual punishment, and asks the court to reduce it, should the court otherwise affirm the judgment of conviction. This court, in the case of State v. Evans, 73 Idaho 50, 59, 245 P.2d 788, held that the district judge could fix, in his discretion, a maximum sentence at life imprisonment or less under the statute involved in this case, I.C. sec. 18–6607. A review of all the facts and circumstances in this case discloses it to be one of the most aggravated cases that could arise under the statute. In fact, it seems but a miracle that the girl did not die.

■ Ordinarily, where the imposed sentence is within the limits prescribed by statute in the committed offense, it will not be regarded as cruel and unusual. Schultz v. Zerbst, 10 Cir., 73 F.2d 668; Sansone v. Zerbst, 10 Cir., 73 F.2d 670; Martin v. United States, 10 Cir., 100 F.2d 490; Troutman v. United States, 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1047; Brown v. State, 152 Fla. 853, 13 So.2d 458.

We do not believe the district judge abused his discretion in fixing the sentence at life imprisonment in this case.

We have examined each of the other alleged errors raised by the appellant in this case, and find them to be without merit.

The judgment of conviction is affirmed.

TAYLOR, C. J., and PORTER and SMITH, JJ., concur.

KEETON, Justice.

In this proceeding the majority opinion justifies the sentencing of a boy fifteen years of age to the penitentiary for life on the ground that the crime for which he was convicted was heinous and brutal.

Crimes of violence against the person of another are in most cases committed with brutality and cruelty and are many times sadistic in nature.

Viewing the evidence in a light most favorable to the State, appellant committed two major crimes: First, assault with intent to commit murder; second, sodomy. The punishment for the crime of assault with intent to commit murder is imprisonment in the State Penitentiary for not less than one, nor more than fourteen years. Sec. 18-4015, I.C.

I can find no precedent that justifies the severity of the sentence imposed and am of the opinion the sentence should be reduced to a maximum of fourteen years.

In other respects I concur.