685 P.2d 814

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Jerry Dave HARMON, Defendant-Appellant.**

No. 14886.

Supreme Court of Idaho.

June 13, 1984.

Rehearing Denied Aug. 28, 1984.

W. Marcus W. Nye, of Racine, Olson, Nye & Cooper, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Appellant Harmon appeals from the district court's order denying his motion to withdraw his guilty plea, and from the sentence imposed. The information to which the guilty plea was entered alleged that while defendant, age 38, was visiting the trailer home of his stepdaughter, defendant took his stepgrandson, age 9, and two neighbor girls, ages 6 and 8, to a barn or granary near the trailer park. Defendant gave money to the girls and then took the eight year old girl to a secluded place within the outbuildings. Defendant disrobed the eight year old girl and attempted sexual penetration for which he was charged with committing a lewd and lascivious act in violation of I.C. § 18–6607.

Defendant initially pleaded not guilty, but subsequently made a motion to withdraw the plea and enter a plea of guilty. At the hearing on the motion and again at the sentencing hearing, the trial court discussed extensively with defendant and his counsel, defendant's reasons for wanting to plead guilty, his alleged lack of memory, his potential alibi, and the consequences, including the length of a potential prison term. The trial court finally granted the motion and accepted the guilty plea. After conducting a sentencing hearing, the trial court imposed a sentence of a fifteen year indeterminate term in the penitentiary. The defendant, after sentence was imposed, made a motion to withdraw his guilty plea which was denied, and the defendant has appealed.

■ Defendant first argues that the district court abused its discretion in imposing a fifteen year indeterminate prison term for this "non-violent" first offense. We do not agree that this offense was "non-violent." An act by an adult male attempting to penetrate an eight year old female child cannot be said to be "non-violent." Molestation of such a young child is inherently coercive and akin to violence. Further, the

record demonstrates that this child has the potential for long lasting trauma and experiences serious emotional problems which may well continue into the teens and adulthood.

Other aggravating evidence presented at the sentencing hearing was the stipulated testimony of the defendant's nine year old stepgrandson. The district judge called the boy to the stand and questioned him in order to ascertain his ability to tell the truth, after which the boy was placed under oath. In order to avoid having the boy testify, but without admitting that the testimony was truthful, the defense stipulated that the boy would testify of at least six occasions of sexual contact between the defendant and his stepgrandson. The prosecutor then informed the court of these incidents in detail, which the defense agreed was within the scope of the boy's testimony. The district judge stated that he believed the boy would have told the truth and that the defense presented no evidence to rebut the testimony other than "Mrs. Harmon, who was not there and has a belief in her husband and is ... wonderful [but] it doesn't dispute the testimony [of the boy]."

■ The defendant's sexual abuse counselor, who was contacted by telephone during the sentencing hearing at the defendant's request, informed the court that if these other incidents were true it revealed an indiscriminate involvement with both male and female children, which posed an increased risk of exposure to society. The counselor said that the defendant had not disclosed the incidents to her and that if the incidents were true, it indicated that the defendant had not fully come to grips with his problem. The sentencing court noted that one of its primary duties was to protect society, and although there was some mitigating evidence, we find no abuse of discretion in imposing a fifteen year indeterminate prison sentence on the defendant. *See State v. Stormoen,* 103 Idaho 83, 645 P.2d 317 (1983).

The defendant next claims the district court erred in refusing to allow withdrawal of his guilty plea after the sentence was imposed. Such withdrawal is governed by I.C.R. 33(c) which states:

**"Rule 33. Sentence and judgment.—**

...

....

"(c) Withdrawal of plea of guilty. A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

Since the motion to withdraw the plea was made only after sentence was imposed, the defendant bases his argument on the "manifest injustice" standard, claiming that it is satisfied because he did not realize the importance of his alibi defense, and he pleaded guilty only because he believed he would be found guilty, not because he admits doing the act.

 The record of the hearing in which the defendant pleaded guilty discloses that he freely and voluntarily pleaded guilty with full knowledge of all the consequences. The alibi issue was not specifically addressed at this initial hearing, but counsel for defendant stated, "We have discussed the legal defenses that could be raised fully, and I know of no legal reason why the ... [guilty plea] should not be accepted." At the subsequent sentencing hearing the potential alibi defense came to the knowledge of the judge when Mrs. Harmon testified that the defendant was in town having dinner with her at the time of the alleged incident. The judge then discussed at length with counsel and defendant the wisdom of pleading guilty when a potential alibi defense was available. With the approval of counsel, the defendant finally concluded, "I'll have my guilty plea stand." The fact that the defendant may not specifically recall or admit to committing the act does not foreclose him from voluntarily pleading guilty since the defendant agrees that the evidence makes a strong factual case against him. *See State v. Howerton,* 105 Idaho 1, 665 P.2d 700 (1983); *Sparrow v. State,* 102 Idaho 60, 625 P.2d 414 (1981). We therefore affirm the district court's denial of the motion to withdraw the guilty plea after the sentence was imposed.

 The defendant's last assignment of error is that I.C. § 18–6607 is unconstitutionally vague, arguing that it fails to give fair notice of what acts violate the statute. Defendant cites as authority the United States District Court of Idaho opinion in *Schwartzmiller v. Gardner,* 567 F.Supp. 1371 (1983), in which the federal court ruled, during the pendency of the present appeal, that I.C. § 18–6607 was facially vague and unconstitutional as applied to one count of Schwartzmiller's conviction, but constitutional as applied to two other counts. While we are not bound by the opinion of the federal district court, due regard for the opinions of the United States District Court of Idaho requires us to analyze appellant's claim in some detail. *United States ex rel. Lawrence v. Woods,* 432 F.2d 1072 (7th Cir.Ill.), *cert. den.* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1970) (a federal district court ruling, during the pendency of an unrelated appeal of conviction in state court, that an ordinance is void for vagueness is not binding on the state court).

We have previously upheld I.C. § 18–6607 against constitutional challenges that it is void for vagueness. *E.g., State v. Evans,* 73 Idaho 50, 245 P.2d 788 (1952); *State v. Thurlow,* 85 Idaho 96, 375 P.2d 996 (1962); *State v. Herr,* 97 Idaho 783, 554 P.2d 961 (1976). Other jurisdictions have upheld "statutes similar to I.C. § 18–6607. *Lovelace v. Clark,* 83 Ariz. 27, 315 P.2d 876 (1957) (commit, in unnatural manner, any lewd or lascivious act); *State v. Bateman,* 113 Ariz. 107, 547 P.2d 6 (1976) (crime against nature); *Franklin v. State,* 257 So.2d 21 (Fla.1971) (lascivious acts). In addition, statutes proscribing sodomy are almost universally upheld. *See, e.g.,* 70 Am.Jur.2d Sodomy § 2." *Schwartzmiller v. Gardner,* 567 F.Supp. at 1375 *supra.* The United States Supreme Court has up-

held the statutory language of "crimes against nature," *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), as giving fair notice of what acts are proscribed. We note that the similar language of "infamous crime against nature" has been used in Idaho as a description of what types of acts are included in violations of I.C. § 18–6607. *State v. Wall,* 73 Idaho 142, 248 P.2d 222 (1952). I.C. § 18–6607 does not simply proscribe "lewd or lascivious act or acts"; it goes further and narrows what acts are in violation of the statute by proscribing "acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen (16) years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires . . . ." *See State v. Evans, supra.* The federal district court in *Schwartzmiller,* at p. 1374, ruled in reference to this latter statutory language that:

> "[There is] no legal authority nor . . . [credible argument] that people of ordinary intelligence do not know what body parts are or what lust, passions, and sexual desires refer to. The court thus rules without hesitation that these phrases are sufficiently definite, when used in combination, to pass constitutional muster."

If such language can stand on its own, we fail to see how the addition of two adjectives such as "lewd" and "lascivious" describing the proscribed acts could render the entire statute unconstitutionally vague.

▮▮ *Schwartzmiller* relies heavily on the standards set out in *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). That case involved a California vagrancy statute which infringed upon fundamental rights. *Kolender* states:

> "Our concern here is based upon the 'potential for arbitrarily suppressing First Amendment liberties . . . .' . . . In addition, § 647(e) implicates consideration of the constitutional right to freedom of movement. . . . .
> . . . .[9]

"[9]. To the extent that § 647(e) criminalizes a suspect's failure to answer such questions put

to him by police officers, Fifth Amendment concerns are implicated. . . ." 461 U.S. at 358–60, 103 S.Ct. at 1859–60.

It is well settled that statutes affecting fundamental interests require "more precision in drafting," *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974), or a "greater degree of specificity," *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). *See also* 16A Am.Jur.2d Constitutional Law § 818, p. 992–93 (1979). However, the present case involving I.C. § 18–6607 is more similar to the "crimes against nature" statute considered in *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), wherein the United States Supreme Court concluded that "this is not a case in which the statute threatened a fundamental right such as freedom of speech so as to call for any special judicial scrutiny, *see Smith v. Goguen,* [*supra* ]." *Rose v. Locke, supra* 423 U.S. at 49–50, 96 S.Ct. at 244. There is no fundamental right to commit sexual acts upon children which would be threatened by I.C. § 18–6607. Therefore the standard against which it should be judged is:

> "It is settled that the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' (Citations omitted.) But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' (Citation omitted.) Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. (Citations omitted.) All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke,* 423 U.S. at 49–50, 96 S.Ct. at 244.

Viewed against this standard, we conclude once again that the phrase "lewd or lascivious act or acts upon or with the body or any part or any member thereof of a minor or child under the age of sixteen (16) years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires ..." is not facially vague and is sufficiently definite to give fair warning to the people of Idaho as to what acts are proscribed, without including an exhaustive list of detailed deviant bodily contacts and/or exhibitions which one might imagine.

■ Even applying *Schwartzmiller's* rationale that the statute is unconstitutionally vague but can be constitutionally applied to acts which have previously been held in violation, I.C. § 18–6607 is constitutional as applied to the act committed by defendant Harmon. The charge against Harmon was for "having a penal erection and by attempting to place his penis in the said ... [child's] anal or vaginal area of her body ...." We have previously held that "the infamous crime against nature, where the victim is a child under sixteen years would ... constitute a violation of § 18–6607." *State v. Wall,* 73 Idaho 142, 144, 248 P.2d 222, 223 (1952). Other acts which have been held to violate the statute are: acts committed by an adult male on a minor female "with the intent and purpose of having sexual intercourse," *State v. Petty,* 73 Idaho 136, 138, 248 P.2d 218, 219 (1952); and "attempted sodomy," *State v. Iverson,* 77 Idaho 103, 289 P.2d 603 (1955). These previous cases put defendant Harmon on adequate and fair notice that his act violated I.C. § 18–6607. Accordingly, we hold that I.C. § 18–6607 is not unconstitutional.

Affirmed.

DONALDSON, C.J., SHEPARD, J., and WALTERS, J. Pro Tem., concur.

BISTLINE, Justice, concurring in part and dissenting.

## I.

### The Sentence

Although I do concur in upholding the sentence imposed by the district court, I do believe that it may turn out to be excessive. If the defendant is withdrawn from society, then, during that time little children will be safe from his inexcusable activities—which is surely what the district court considered a foremost requirement. Although the majority opinion seems more bent on punishment for the sake of punishment, it is difficult to envision this defendant as a hardened criminal. There ordinarily is insufficient time during which the district court has jurisdiction to alter a sentence. Here, however, on remand, where thirty months have now gone by, under the provisions of I.C.R. 35, the district court could accurately ascertain the time which it might take to cure the defendant of his affliction and at the same time prevent further transgressions. This may be an instance where appellate delay is beneficial. Sufficient time has gone by to make meaningful a review of the sentence—which otherwise could not have been done under existing statutes and rules.

## II.

### The Motion to Withdraw the Guilty Plea

Just last year in *State v. Howerton,* 105 Idaho 1, 665 P.2d 700 (1983), we declined to overturn a district court's denial of a motion to withdraw a guilty plea. The facts of this case are on a par with the facts before us there. Of singular note in both cases the defendant declares that he has no recollection of committing the charged acts. In both cases the defendant was not only counseled, but the court took extreme pains in ascertaining the voluntariness of the guilty plea. Accordingly, I concur in the Court's opinion upholding the denial of the motion.

## III.

If I were being presented with an opinion which presented a rationale of its own for upholding the constitutionality of § 18–6607, it is likely that I might be persuaded to join it. What I see before me, however,

is an opinion which to my mind seems more aimed at defeating *Schwartzmiller v. Gardner*, 567 F.Supp. 1371, United States District Court for the District of Idaho, than in benefiting from it. I find the *Schwartzmiller* opinion extremely well-reasoned, and highly persuasive. It concludes with the holding that the plain language of I.C. § 18–6607 is unconstitutionally vague on its face, but adds two of petitioner's convictions are valid because of previous saving interpretations made by the Idaho Supreme Court. The district court was there referring to *State v. Evans*, 73 Idaho 50, 245 P.2d 788 (1952), and *State v. Wall*, 73 Idaho 142, 248 P.2d 222 (1952). Obviously acknowledging the fetters of these two cases and the constraints of *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), the district court noted that the Idaho Supreme Court has not ever re-examined the rationale of *Evans*, 567 F.Supp. pp. 1374 and 1377. Nor, according to my research, has it ever re-examined the validity of *Wall*, or *State v. Petty, State v. Deane*, 73 Idaho 136, 248 P.2d 218 (1952).

The United States District Court was precluded from overruling the antiquated 1952 cases, but this Court is not. However, rather than to further the advance upon which the district court so nobly embarked, the majority who speaks this day for this Court refers to those 1952 cases and declares that "These previous cases put defendant Harmon on adequate and fair notice that his act violated I.C. § 18–6607." On that predicate the majority predicates its ultimate determination that I.C. § 18–6607 is not unconstitutional. It is difficult for me to believe that the majority can so easily eschew this prime opportunity to continue the good work which the district court started in *Schwartzmiller*. The defendant Harmon will be astounded to learn from the majority opinion that those 1952 cases put him on fair notice that his actions were in violation of I.C. § 18–6607. Even those scant few who read this Court's opinions will find that tenet untenable—in fact, ridiculous. One would not be quite so startled if the majority simply said that

defendant should have known of the statute, but to say, as the majority does, that he and all other citizens of Idaho are chargeable with the contents of Volume 73 of the Idaho Reports is simply an outrage to ordinary sensibilities. I am put in mind of an example brought to our attention at oral argument in the last year by a member of the bar. In conversation with his son concerning a pending case, the son was told that the defendant was charged with the infamous crime against nature. "What kind of trees did the defendant cut down, Dad?" asked the son. While it is true the lad was still in his teens, generally that is a very knowledgeable age, and his statement serves to well demonstrate that not only is that statute for the most part unknown to the populace, it is beyond the realm of reality for a court to hold the populace chargeable with knowledge of its case-law. Such a proposition is a monstrous absurdity.

## IV.

### Suggested Remedial Legislation

The District Court noted that:

"many 'forward-looking jurisdictions have expressly rejected the antiquated notion that the penal code should not clearly define such acts.' *Balthazar v. Supreme Court*, 573 F.2d 698, 701 (1978). The phrase 'such acts' obviously refers to the specific conduct the legislature seeks to prohibit. In the future, convictions under § 18–6607 can be constitutionally obtained only against defendants who engage in conduct *to which the Idaho Supreme Court has already applied the statute*, or which the same Court has specifically said is lewd and lascivious. Because that is the limit of its present scope, the *Idaho Legislature may decide to rewrite § 18–6607* so that it complies with constitutional minimums of due process; if so the Court refers that body to 18 U.S.C. § 2253 (1978) as a guide:

. . . .

'(2) "sexually explicit conduct" actual or simulated—

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sado-masochistic abuse (for the purpose of sexual stimulation); or

(E) lewd exhibition of the genitals or pubic area of any person; ....'

Congress passed that statute and accompanying definitions to enable the District of Columbia to curb sexual exploitation of children. The language used could not irritate the moral sensibilities of anyone and it complies with all notions of due process by providing fair notice and sufficient legal guidelines for law enforcement. But that is a determination the legislation must make." Appellant's Brief, pp. 22–23.

Thus, provided with excellent guidelines, the legislature indeed could have readily rectified the existing problem. Instead of presenting the legislature with proposed remedial language, for which there was more than ample time, the attorney general prosecuted an appeal to the Ninth Circuit Court. If that Court adheres to *Wainwright, supra,* the efforts of the District Court to bring a degree of reason to criminal jurisprudence will go for naught. As I read *Wainwright* all that the attorney general needs to do in order to perpetuate the dark ages is to present a certified copy of the majority opinion to the Court of Appeals in San Francisco. The majority, again I say for whatever reason, and certainly not in the advancement of the administration of justice, has clearly decided to undo the considerable labors of the District Court. The District Court may find some solace in observing that the Idaho Court of Appeals recently fared no better in its effort at improving the system. *State v. Nield,* 106 Idaho 665, 682 P.2d 618 (1984).

Making this chapter all the more incomprehensible, four members of this Court wrote altogether four opinions whereby the statute proscribing prostitution was not provided with a saving gloss, but rather struck down because it "failed to use clear and unambiguous language to provide notice of the proscribed conduct." *State v. Lopez,* 98 Idaho 581, 590, 570 P.2d 259, 267 (1977), and because of "failure of the complaint to charge an offense." 98 Idaho at 590, 570 P.2d at 267. I was unable to agree in that case, and am equally unable to fathom the course charted by the majority in this.

Those 3–2 decisions by this Court in 1952 are in dire need of re-evaluation. Since it is not going to happen, perhaps some fair-minded legislators may chance upon the decision of the United States District Court and initiate appropriate action. In that regard it may be noted that the 1977 legislature quickly (and wisely) responded to the first set of opinions in *Lopez,* June 14, 1976, by passing remedial legislation instead of awaiting the outcome of the rehearing.